[No. 24491. *En Banc.* September 8, 1933.]

WILLIAM M. CULLITON *et al., Respondents,* v. SAMUEL H. CHASE *et al., Appellants.*

McKALE'S, INC. *et al., Respondents,* v. SAMUEL H. CHASE *et al., Appellants.*[1]

[1]Reported in 25 P. (2d) 81.

*The Attorney General* and *John W. Hanna, Assistant,* for appellant, contended, *inter alia,* that a tax on income is not a tax on property: *In re Opinion of the Justices* (dissenting opinion), 77 N. H. 611, 93 Atl. 311; *Sims v. Ahrens,* 167 Ark. 557, 271 S. W. 720; *Hattiesburg Grocery Co. v. Robertson,* 126 Miss. 34, 88 South. 4, 25 A. L. R. 748; *State ex rel. Knox v. Gulf, M. & N. R. Co.,* 138 Miss. 70, 104 South. 689; *Trefry v. Putman,* 227 Mass. 522, 116 N. E. 904, L. R. A. 1917 F, 806; *Ludlow-Sayre Wire Co. v. Wollbrinck,* 275 Mo. 339, 205 S. W. 196; *Dubuque v. Northwestern Life Insurance Co.,* 29 Iowa 9; *Standard Lumber Co. v. Pierce,* 112 Ore. 314, 228 Pac. 812. Hence, the constitutional limitations in the 14th amendment have no application: *Fleetwood v. Read,* 21 Wash. 547, 58 Pac. 665, 47 L. R. A. 205; *State v. Sheppard,* 79 Wash. 328, 140 Pac. 332; *State v. Clark,* 30 Wash. 439, 71 Pac. 20; *Nipges v. Thornton,* 119 Wash. 464, 206 Pac. 17; *State v. Hart,* 125 Wash. 520, 217 Pac. 45. A graduated income tax does not violate the constitutional mandates as to uniformity or equality in the same classes of property, or in the definition of the word property as including tangibles and intangibles subject to ownership: *Wilson v. Lambert,* 168 U. S. 611; *Myles Salt Co. v. Board of Comm'rs,* 239 U. S. 478; *Foster v. Hart Mining Co.,* 52 Colo. 459, 122 Pac. 48; *State ex rel. Knox v. Gulf, M. & N. R. Co.,* 138 Miss. 70, 104

South. 689; *State v. Pinder*, 30 Del. 416, 108 Atl. 43; *Lake Superior Consolidated Iron Mines v. Lord*, 271 U. S. 577; *Peacock & Co. v. Pratt*, 121 Fed. 772; *Magoun v. Illinois Trust and Savings Bank*, 170 U. S. 283; *Educational Films Corporation v. Ward*, 282 U. S. 379; *Pacific Co. v. Johnson*, 285 U. S. 480; Minnesota Law Review, Vol. 12, No. 7, June, 1928.

*Lane & Thompson*, amicus curiae, contended, *inter alia*, that the proposed tax is an excise tax and not a property tax: Cooley on Taxation (4th ed.), §§ 1743, 1749-1751; 26 R. C. L. (Taxation) 142; 61 C. J. 1559; *Featherstone v. Norman*, 170 Ga. 370, 153 S. E. 58; *Fitch v. Wisconsin Tax Commission*, 201 Wis. 383, 230 N. W. 37; *Indian Motorcycle Co. v. U. S.*, 283 U. S. 570; *State ex rel. Moon Co. v. Wisconsin Tax Commission*, 166 Wis. 287, 163 N. W. 639, 165 N. W. 470; *Trefry v. Putman*, 227 Mass. 522, 116 N. E. 904, L. R. A. 1917F, 806; *Diefendorf v. Gallet*, 51 Ida. 619, 10 P. (2d) 309; Black, Taxation (3rd ed.), § 199. The following cases hold that an income tax is constitutional: *Standard Lumber Co. v. Pierce*, 112 Ore. 314, 228 Pac. 812; *Ludlow-Sayre Wire Co. v. Wollbrinck*, 275 Mo. 339, 205 S. W. 196; *Waring v. Mayor of Savannah*, 60 Ga. 93; *Glasgow v. Rouse*, 43 Mo. 479; *Sims v. Ahrens*, 167 Ark. 557, 271 S. W. 720; *Hattiesburg Grocery Co. v. Robertson*, 126 Miss. 34, 88 South. 4, 25 A. L. R. 748; *State ex rel. Knox v. Gulf, M. & N. R. Co.*, 138 Miss. 70, 104 South. 689; *Savannah v. Hartridge*, 8 Ga. 23; *Shields v. Williams*, 159 Tenn. 349, 19 S. W. (2d) 261; *Clark v. Maxwell*, 197 N. C. 604, 150 S. E. 190; *Young v. Illinois Athletic Club*, 310 Ill. 75, 141 N. E. 369, 30 A. L. R. 985; *Stanley v. Gates*, 179 Ark. 886, 19 S. W. (2d) 1000. The weight of authority is that income is not "property" for tax purposes: *Eliasberg Bros. Mercantile Co. v. Grimes*, 204 Ala. 492, 86 South. 56, 11 A. L. R. 300; *Hattiesburg*

*Grocery Co. v. Robertson, supra; State ex rel. Knox v. Gulf, M. & N. R. Co., supra; Sims v. Ahrens, supra;. Young v. Illinois Athletic Club, supra; State ex rel. Bundy v. Nygaard,* 163 Wis. 307, 158 N. W. 87, L. R. A. 1917E, 563; *Brushaber v. U. P. R. Co.,* 240 U. S. 1; *State ex rel. Manitowoc Gas Co. v. Wisconsin Tax Commission,* 161 Wis. 111, 152 N. W. 848; *Stony Brook R. R. Corp. v. Boston & Maine R. R. Co.,* 260 Mass. 379, 157 N. E. 607, 53 A. L. R. 700. Even if income be held to be property, the requirement of uniformity is not violated: *Clark v. Maxwell, supra; Ludlow-Sayre Wire Co. v. Wollbrinck, supra; Alderman v. Wells,* 85 S. C. 507, 67 S. E. 781, 27 L. R. A. (N. S.) 864; *New Orleans v. Fourchy,* 30 La. An. 910; *Diefendorf v. Gallet, supra; Tekoa v. Reilly,* 47 Wash. 202, 91 Pac. 769; *State ex rel. Bolens v. Frear,* 148 Wis. 456, 134 N. W. 673, 135 N. W. 164, Ann. Cas. 1913A, 1147, L. R. A. 1915B, 569; Cooley, Taxation, § 1760.

*Grinstead, Laube, Laughlin & Meakim, E. W. Anderson,* and *Yantis & Brodie, amici curiae,* contended, *inter alia,* that the law is presumptively valid: *State ex rel. Mullen v. Howell,* 107 Wash. 167, 181 Pac. 920; *State ex rel. Carroll v. Superior Court,* 113 Wash. 54, 193 Pac. 226; *Record Publishing Co. v. Monson,* 123 Wash. 569, 213 Pac. 13. The constitution is a limitation merely on the legislative power: *State v. Clark,* 30 Wash. 439, 71 Pac. 20; *State v. Ide,* 35 Wash. 576, 77 Pac. 961, 67 L. R. A. 280, 102 Am. St. 914; *Thurston County v. Tenino Stone Quarries,* 44 Wash. 351, 87 Pac. 634, 9 L. R. A. (N. S.) 306; *Walker v. Spokane,* 62 Wash. 312, 113 Pac. 775, Ann. Cas. 1912C, 994; *Paine v. Port of Seattle,* 70 Wash. 294, 126 Pac. 628, 127 Pac. 580; *Litchman v. Shannon,* 90 Wash. 186, 155 Pac. 783; *Standard Oil Co. v. Graves,* 94 Wash. 291, 162 Pac. 558. In taxation there is a broader power of classification than in any other exercise of legis-

lative power: *Bell's Gap R. R. Co. v. Pennsylvania,*
134 U. S. 232; *Magoun v. Illinois Trust & Savings
Bank,* 170 U. S. 283; *Michigan Central R. v. Powers,*
201 U. S. 245; *Alderman v. Wells,* 85 S. C. 507, 67
S. E. 781, 27 L. R. A. (N. S.) 864; *Ludlow-Sayre Wire
Co. v. Wollbrinck,* 275 Mo. 339, 205 S. W. 196; *State
ex rel. Bolens v. Frear,* 148 Wis. 456, 134 N. W. 673,
135 N. W. 164, Ann. Cas. 1913A, 1147, L. R. A. 1915B,
569; *Standard Lumber Co. v. Pierce,* 112 Ore. 314,
228 Pac. 812. The legislative declaration will not be
set aside by the courts unless it is clear that the dec-
laration is obviously false or a palpable attempt at
dissimulation: *State ex rel. Short v. Hinkle,* 116 Wash.
1, 198 Pac. 535; *State ex rel. Case v. Howell,* 85 Wash.
294, 147 Pac. 1159, Ann. Cas. 1916A, 1231; *Hovey v.
Foster,* 118 Ind. 502, 21 N. E. 39; *Block v. Hirsh,* 256
U. S. 135, 16 A. L. R. 165; *Radice v. New York,* 264
U. S. 292; *Lemon v. Rumsey,* 180 W. Va. 242, 150 S. E.
725; *Macallen Co. v. Massachusetts,* 279 U. S. 620, 65
A. L. R. 866; *Aberdeen Savings & Loan Assn. v.
Chase,* 157 Wash. 351, 289 Pac. 536, 290 Pac. 697, 71
A. L. R. 232. Income property is not property for
the purposes of taxation: *Stony Brook R. R. Corp. v.
Boston & Maine R. R. Co.,* 260 Mass. 379, 157 N. E.
607, 53 A. L. R. 700; *Trefry v. Putnam,* 227 Mass. 522,
116 N. E. 904, L. R. A. 1917F, 806. *In re Opinion of
Justices,* 77 N. H. 611, 93 Atl. 311; *Glasgow v. Rouse,*
43 Mo. 479; *Alderman v. Wells, supra; State ex rel.
Moon Co. v. Wisconsin Tax Commission,* 166 Wis. 287,
163 N. W. 639, 165 N. W. 470; *Waring v. Mayor of
Savannah,* 60 Ga. 93; *Stanley v. Gates,* 179 Ark. 886,
19 S. W. (2d) 1000; *Featherstone v. Norman,* 170 Ga.
370, 153 S. E. 58; *Hattiesburg Grocery Co. v. Robert-
son,* 126 Miss. 34, 88 South. 4, 25 A. L. R. 748; *State
ex rel. Knox v. Gulf, M. & N. R. Co.,* 138 Miss. 70, 104
South. 689; *Ludlow-Saylor Wire Co. v. Wollbrinck,*

*supra; Crescent Manufacturing Co. v. Tax Commission,* 129 S. C. 480, 124 S. E. 761; *State ex rel. Bolens v. Frear, supra; Diefendorf v. Gallet,* 51 Ida. 619, 10 P. (2d) 309; *Standard Lumber Co. v. Pierce, supra.* Classification for taxation is not reviewable by the courts unless palpably arbitrary: *Magoun v. Illinois Trust & Savings Bank, supra; Bell's Gap R. R. Co. v. Pennsylvania, supra; Keeney v. New York,* 222 U. S. 525; *Citizens Tel. Co. v. Fuller,* 229 U. S. 322; *Stebbins v. Riley,* 268 U. S. 137, 44 A. L. R. 1454; *Ohio Oil Co. v. Conway,* 281 U. S. 146; *Jackson v. Commissioners,* 283 U. S. 527, 73 A. L. R. 1464. Courts have uniformly sustained graduated income taxes under constitutional provisions requiring uniformity of taxation as to class: *Standard Lumber Co. v. Pierce, supra; State v. Pinder,* 30 Del. 416, 108 Atl. 43; *Ludlow-Sayre Wire Co. v. Wollbrinck, supra; State ex rel. Knox v. Gulf, M. & N. R. Co., supra; Featherstone v. Norman, supra.*

*Harvey W. McCormack* and *R. W. Maxwell, amici curiae,* contended that this income tax is an excise tax.

*A. Emerson Cross, amicus curiae,* and *Charles W. Hall, amicus curiae,* as attorney for Washington State Grange, contended that the judgment should be reversed.

*Preston, Thorgrimson & Turner* and *Lundin, Barto & Devin,* for respondents McKale's, Inc., *et al.,* contended, *inter alia,* that the graduated feature of the act is violative of the provision of the fourteenth amendment to the state constitution requiring taxation of each class of property to be uniform: *Aberdeen Savings & Loan Association v. Chase,* 157 Wash. 351, 289 Pac. 536, 290 Pac. 697, 71 A. L. R. 232; *Bank of Fairfield v. Spokane County,* 173 Wash. 145, 22 P.

(2d) 646; *MacCallen Co. v. Massachusetts,* 279 U. S. 620, 65 A. L. R. 866; *Northwestern Mutual Life Insurance Co. v. Lewis & Clarke County,* 28 Mont. 484, 72 Pac. 982, 98 Am. St. 572; *Cruse v. Fischl,* 55 Mont. 258, 175 Pac. 878; *Eliasberg Bros. Mercantile Co. v. Grimes,* 204 Ala. 492, 86 South. 56, 11 A. L. R. 300; *In re Opinion of Justices,* 220 Mass. 613, 108 N. E. 570. The constitutions of other states differentiate this case from the cases in those states: *In re Opinion of Justices,* 226 Mass. 583, 165 N. E. 900; *State ex rel. Moon Co. v. Wisconsin Tax Commission,* 166 Wis. 287, 163 N. W. 639, 165 N. W. 470; *Alderman v. Wells,* 85 S. C. 507, 67 S. E. 781, 27 L. R. A. (N.S.) 864; *Featherstone v. Norman,* 170 Ga. 370, 153 S. E. 58; *Stanley v. Gates,* 179 Ark. 886, 19 S. W: (2d) 1000; *Sims v. Ahrens,* 167 Ark. 557, 271 S. W. 720; *Hixon v. School District,* 60 S. W. (2d) (Ark.) 1027; *State ex rel. Knox v. Gulf, M. & N. R. Co.* (dissenting opinion), 138 Miss. 70, 104 South. 689; *Diefendorf v. Gallet,* 51 Ida. 619, 10 P. (2d) 309; *State v. Pinder,* 30 Del. 416, 108 Atl. 43; *Ludlow-Sayre Wire Co. v. Wollbrinck,* 275 Mo. 339, 205 S. W. 196; *Bacon v. Ransom,* 56 S. W. (2d) (Mo.) 786. The taxation of property at a progressive rate is violative of the uniformity clause of our constitution: *In re Opinion of Justices,* 266 Mass. 583, 165 N. E. 900; *In re Opinion of Justices,* 82 N. H. 561, 138 Atl. 284; *In re Opinion of Justices,* 84 N. H. 559, 149 Atl. 321; *Bachrach v. Nelson,* 349 Ill. 579, 182 N. E. 909; *Evans v. McCabe,* 164 Tenn. 672, 62 S. W. (2d) 159; *Raydure v. Bd. of Supervisors,* 183 Ky. 84, 209 S. W. 19; *In re Cope's Estate,* 191 Pa. 1, 43 Atl. 79, 45 L. R. A. 316, 71 Am. St. 749; *Black v. State,* 113 Wis. 205, 89 N. W. 522, 90 Am. St. 853; *State ex rel. Schwartz v. Ferris,* 53 Ohio 314, 41 N. E. 579, 30 L. R. A. 218; *Cummings v. National Bank,* 101 U. S. 153; *Aberdeen Sav-*

*ings & Loan Association v. Chase* (dissenting opinion), 157 Wash. 351, 289 Pac. 536, 290 Pac. 697, 71 A. L. R. 232; *State ex rel. Nettleton v. Case,* 39 Wash. 177, 81 Pac. 554, 1 L. R. A. (N. S.) 152, 109 Am. St. 874; *State ex rel. Lindsey v. Derbyshire,* 79 Wash. 227, 140 Pac. 540; *State v. Gorman,* 40 Minn. 232, 41 N. W. 948, 2 L. R. A. 701; *Fatjo v. Pfister,* 117 Cal. 83, 48 Pac. 1012; *Cook County v. Fairbank,* 222 Ill. 578, 78 N. E. 895; *Hauser v. Miller,* 37 Mont. 22, 94 Pac. 197; *Malin v. LaMoure Co.,* 27 N. D. 140, 145 N. W. 582, 50 L. R. A. (N. S.) 997, Ann. Cas. 1916C, 207; *Chapman v. Ada County,* 48 Ida. 632, 284 Pac. 259; *Berryman v. Bowers,* 31 Ariz. 56, 250 Pac. 361. A tax upon the income from government bonds is a tax on the bonds themselves: *McCulloch v. State,* 17 U. S. 316; *Weston v. Charleston,* 27 U. S. 449; *Miller v. Milwaukee,* 272 U. S. 713; *Northwestern Mutual Life Insurance Co. v. Wisconsin,* 275 U. S. 136; *MacCallen Co. v. Massachusetts, supra; Willcuts v. Bunn,* 282 U. S. 216; *Indian Motorcycle Co. v. U. S.,* 283 U. S. 570. An initiative measure has no greater strength or dignity than attaches to any other legislation: *State ex rel. v. Richardson,* 48 Ore. 309, 85 Pac. 225, 8 L. R. A. (N. S.) 362; *Turnidge v. Thompson,* 89 Ore. 637, 175 Pac. 281; *Galvin v. Board of Supervisors,* 195 Cal. 686, 235 Pac. 450; *Wallace v. Zinman,* 200 Cal. 585, 254 Pac. 946, 62 L. R. A. 1341; *State ex rel. Lashley v. Becker,* 235 S. W. (Mo.) 1017; *People v. Prevost,* 55 Colo. 199, 134 Pac. 129; *State ex rel. Berry v. Superior Court,* 92 Wash. 16, 159 Pac. 92. The invalid part of the act is inseparable from the remainder: *Dorchy v. Kansas,* 264 U. S. 286; *Williams v. Standard Oil Co.,* 278 U. S. 235; *Hill v. Wallace,* 259 U. S. 44.

*Newman H. Clark, M. F. Mathewson* and *J. T. Trullinger,* for respondents Culliton *et al.,* contended, *inter*

*alia,* that a tax on income is a property tax: *Pollock v. Farmers' Loan & Trust Co.,* 157 U. S. 429, 158 U. S. 601; *In re Opinions of Justices,* 220 Mass. 613, 108 N. E. 570; *Eaton, Crane & Pike Co. v. Commonwealth,* 237 Mass. 523, 130 N. E. 99; *State v. Pinder,* 30 Del. 416, 108 Atl. 43; *Eliasberg Bros. Mercantile Co. v. Grimes,* 204 Ala. 492, 86 South. 56, 11 A. L. R. 300; *Lilienthal Mercantile Co. v. Breslin,* 204 Ala. 502, 86 South. 69; *Bachrach v. Nelson,* 349 Ill. 579, 182 N. E. 909; *In re Opinion of Justices,* 81 N. H. 552, 120 Atl. 629.

*George Donworth, Charles T. Donworth, Allen, Froude, Hilen & Askren, McMicken, Ramsey, Rupp & Schweppe,* and *Peters, Evans & McLaren, amici curiae,* contended that the judgment should be affirmed.

HOLCOMB, J.—Alleging that the state income tax law (initiative No. 69, chap. 5, Laws of 1933, p. 49 [Rem. 1933 Sup., § 11200-1 *et seq.*]) was unconstitutional, respondents instituted two actions, which were consolidated for trial and appeal, against the members of the state tax commission to secure a permanent injunction restraining defendants from enforcing the act mentioned. The trial court was of the view that the challenged act offended against the uniformity requirement of the fourteenth amendment to the state constitution, and was therefore void. The demurrers to the complaints were overruled, and a decree was entered permanently restraining the enforcement of the act, from which decree comes this appeal.

The fourteenth amendment to the state constitution reads:

"The power of taxation shall never be suspended, surrendered or contracted away. All taxes shall be uniform upon the same class of property within the

territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. The word 'property' as used herein shall mean and include everything, whether tangible or intangible, subject to ownership. All real estate shall constitute one class: Provided, That the Legislature may tax mines and mineral resources and lands devoted to reforestation by either a yield tax or an ad valorem tax at such rate as it may fix, or by both. Such property as the Legislature may by general laws provide shall be exempt from taxation. Property of the United States and of the state, counties, school districts and other municipal corporations, and credits secured by property actually taxed in this state, not exceeding in value the value of such property, shall be exempt from taxation. The Legislature shall have power, by appropriate legislation, to exempt personal property to the amount of three hundred dollars ($300) for each head of a family liable to assessment and taxation under the provisions of the laws of this state of which the individual is the actual bona fide owner."

The income tax law provides:

"Section 1. Existing methods of taxation, primarily based on property holdings, are inadequate, inequitable and economically unsound. Present conditions point the need of a new subject matter for taxation, which should be based on the ability to pay. Earnings for a given period are a fair measure of such ability.

"The people of the state of Washington, therefore, exercising herein their supreme power and fundamental right, declare their purpose hereby to tax all annual incomes within the state as such, and not as property.

"There shall be assessed, levied, collected and paid annually, a tax on all net income as hereinafter provided, by every person residing within the state of Washington or by his personal representative in case of death; and by every non-resident of the state, upon such income as is derived from property located or business transacted within the state, except as hereinafter exempted. . . ." Rem. 1933 Sup., § 11200-1.

The system of graduated rates adopted by the income tax law imposes upon the taxpayer a rate of taxation that progresses and becomes larger with the increase in the amount of his taxable income.

■ Respondents insist that, under the constitutional definition, "The word 'property' as used herein shall mean and include everything, whether tangible or intangible, subject to ownership," a tax on income derived from property is a tax on the property from which the income is derived, therefore the method of classification adopted by the income tax law is violative of the requirements of the state constitution that "all taxes shall be uniform upon the same class of property."

Unless the income tax constitutes a tax on property, the uniformity clause of the state constitution is not violated. If income taxes

" . . . are to be deemed a property tax, constitutional limitations applicable to property taxes must be applied. . . . If they are excise taxes, such limitations are not applicable." 4 Cooley, Taxation. (4th ed.), § 1743.

■ The fact that the income tax law was passed as an initiative measure is of no controlling importance, nor can it be likened to an amendment to the constitution. The constitution provides the means, methods and processes for its own amendment.

Amendment 14, which replaced art. 7 of our constitution, was adopted by the people by the proper method in 1930. The income tax law was passed by the people in 1932. All laws on any subject whatever, enacted by either the people or the legislature, must be governed by the provisions of the constitution in force at that time. "The people in their legislative capacity are not, however, superior to the written and fixed con-

stitution.'' *State ex rel. Berry v. Superior Court,* 92 Wash. 16, 159 Pac. 92.

The pertinent portion of amendment 14 of our constitution is:

"All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. The word 'property' as used herein shall mean and include everything, whether tangible or intangible, subject to ownership.''

The initiative act in question is clearly one for public revenue.

It would certainly defy the ingenuity of the most profound lexicographer to formulate a more comprehensive definition of "property." It is "everything, whether *tangible or intangible,* subject to ownership." Income is either property under our fourteenth amendment, or no one owns it. If that is true, any one can use our incomes who has the power to seize or obtain them by foul means. There being no other classifications in our constitution but real and personal property and *intangible* property, incomes necessarily fall within the category of intangible property. No more positive, precise and compelling language could have been used than was used in those words of our fourteenth amendment. It needs no technical construction to tell what those words mean. The overwhelming weight of judicial authority is that "income" is property and a tax upon income is a tax upon property.

None of the decisions from other states have any bearing upon the law before us, because of our peculiarly forceful constitutional definition and the difference in their constitutional authorization or restriction.

In *State ex rel. Bolens v. Frear,* 148 Wis. 456, 134 N. W. 673, Ann. Cas. 1913A 1147, L. R. A. 1915B 569, an income tax act enacted in 1911 was apparently set

out in full by the court and is almost identical with our own income tax act. There are some unimportant differences not necessary to mention. The constitution of Wisconsin had been amended in 1908. It previously had provided that:

"The rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe,"

which provision was amended by the addition of the following words:

"Taxes may also be imposed on incomes, privileges, and occupations, which taxes may be graduated and progressive and reasonable exemptions may be provided."

Previous to the adoption of this amendment, the supreme court of Wisconsin had held an income tax law unconstitutional. In passing upon the income tax act of 1911, the supreme court of that state, among other things, said:

"Words could hardly be plainer to express that idea than the words used. From them it clearly appears that taxation of property and taxation of incomes are recognized as two separate and distinct things in the state constitution; both may be levied, and lawfully levied, because the constitution says so. . . . the people of Wisconsin have said that 'property' means one thing, and 'income' means another; in other words, that income taxation is not property taxation, as the words are used in the constitution of Wisconsin."

How different from the situation here. We have no constitutional provision authorizing taxation of income as one thing and property as another. We have only the constitutional provision that property "shall mean and include everything, whether tangible or intangible, subject to ownership." Until we have such a

constitutional amendment, the hands of the people, as well as the legislature, in enacting laws, are tied.

It has been definitely decided in this state that an income tax is a property tax, which should set the question at rest here. *Aberdeen Savings & Loan Assn. v. Chase,* 157 Wash. 351, 289 Pac. 536, 71 A. L. R. 232. Even though some of us dissented from the majority decision, the dissenting opinions show that the case was thoroughly considered, and the opinion of the majority should govern. In future cases, even a dissenting justice should be bound by the decision of the majority until and unless authoritatively overruled or reversed by some higher tribunal, such as the supreme court of the United States.

It is asserted that a state income tax is an excise tax. That is not correct. The cases cited to sustain the assertions all involved corporate franchise tax laws and the like.

Great reliance is placed by appellants upon a recent decision by the Idaho supreme court in *Diefendorf v. Gallet,* 51 Idaho 619, 10 P. (2d) 307, sustaining an income tax statute of that state, which decision also contains an exhaustive discussion of the authorities upon the question of income taxes. That decision involved the interpretation of three sections of the constitution of Idaho and of the income tax statute which declared that income should not be taxed as property.

One of the peculiar constitutional provisions of Idaho is art. 7, sec. 3, prescribing that, "The word 'property' as herein used shall be defined and classified by law." Another constitutional provision is that, "All taxes shall be uniform upon the same class of subjects within the territorial limits," and providing for the allowance of exemptions. That court held, as would we, under a similar constitutional provision, that the lawmaking power was absolutely free to de-

fine property to be taxed. Our constitution is to the contrary.

Our attention has also been called to a decision by the Montana supreme court, *O'Connell v. State Board of Equalization,* 25 P. (2d) (Mont.) 114, in which that court held, by a majority of three to two, that an income tax law enacted in Montana was valid. Stress was laid in that case upon the fact that the law was copied from the Idaho act, which had theretofore been construed by the supreme court of that state, and it necessarily followed that the law and the judicial interpretation were adopted in the Montana statute. With due respect to the majority of that court, it seems obvious to us, as pointed out in the dissenting opinions, that the majority lost sight of the unique provisions of the Idaho constitution as stated by that court itself. Had we the same "unique" constitutional provision as has Idaho, we should probably follow the decision of that court upon the validity of the income tax law before us.

After the decision by this court in the *Aberdeen Savings & Loan Assn.* case, *supra,* deciding that income was property for the purposes of taxation, the people adopted the fourteenth amendment, *supra,* which made it a part of the fundamental law of the state.

It is also argued that, under the recent decision of this court in *Pacific Tel. & Tel. Co. v. Seattle,* 172 Wash. 649, 21 P. (2d) 721, holding valid certain fees exacted from the utility company in that case, these are excise taxes. That decision was correct solely because such exactions are excise taxes. Such taxes were long ago defined as

"Taxes laid upon the manufacture, sale, or consumption of commodities within the country, upon licenses to pursue certain occupations and upon corporate privileges." Cooley on Constitutional Limitations

(7th ed.), 680. (Quoted in dissenting opinion in *Aberdeen Savings & Loan Assn. v. Chase, supra.*)

The taxes here in question can in no sense be said to be for licenses to pursue certain occupations, or upon corporate or business privileges, or for the manufacture, sale or consumption of commodities within the state.

■ Our fourteenth amendment prescribes that all taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax, etc. It needs no argument to demonstrate that the income taxes here levied are wholly lacking in uniformity.

It is sought to sustain the graduated features of the income tax by analogy to a graduated inheritance tax.

The inheritance tax is really not a tax at all. It is an impost laid but one time, and not annually, as is a tax. The right of devisees, or in cases of inheritance, the right of heirs at law, to take, is not a natural right. It exists only because the state grants the right. After having granted the right, the state may impose as a condition upon the exercise of the right that the state shall receive a certain percentage or proportion thereof. This percentage or proportion may be graduated and may be as large as the state may see fit to impose. This court has so held in two cases: *State v. Clark*, 30 Wash. 439, 71 Pac. 20, and *In re Ellis' Estate*, 169 Wash. 581, 14 P. (2d) 37. There is no similitude between incomes and the portion of an estate passing to one upon the death of another. No well considered decision has ever so held.

We do not lose sight of the well established principle in this state, of which the author of this has always been a pronounced advocate, that every intendment should be brought to bear in favor of the validity of a statute or enactment and if any reasonable doubt ap-

pears it should be resolved in favor of the validity of the law, as we have many times held. *State ex rel. Hamilton v. Martin,* 173 Wash. 249, 23 P. (2d) 1. Nor do we disregard the deplorable financial condition of the state and its taxing divisions and the necessity of raising additional revenues. As to such conditions, it is better that we suffer the inconvenience of the present loss of such revenues than that we disregard the emphatic restrictions of the constitution for the sake of temporary relief. It may be possible to frame an income tax law which will assess all incomes uniformly and comply with our constitution, which, of course, is not now before us and we need not consider it.

It is perfectly obvious that, when the proponents of initiative No. 69 framed the act, they lost sight of our constitutional definition in the fourteenth amendment. The declaration in the law of a purpose to tax all annual incomes as such and not as "property," cannot override the constitution. It is also clear that the people when legislating, the legislature, and the courts, are and should be bound by the limitations, restricttions, definitions and prohibitions of the constitution. It is the fundamental law of the state.

For the reasons herein stated, the decree of the trial court is affirmed.

MAIN, J., concurs.

MITCHELL, J. (concurring)—I think the views of this case expressed in the opinion written by Judge Holcomb are correct.

The taxes intended to be raised by the law appear to be reasonable and fair, and, assuming that incomes should be taxed, a system of graduated rates that become greater as the amount of taxable income increases, such as is provided for in this act, is a good

one. That question, however, is not here. The sole question here relates to the validity of the act under the fourteenth amendment to the state constitution.

I wish to speak more fully of the history of the amendment and of the act, each with respect to the other. In 1929, sixty-three financial associations from different sections of the state brought an action against the members of the state tax commission to enjoin the enforcement of chapter 151, Laws of 1929, p. 380, providing for a tax *measured by income* upon banks and financial corporations. The action was dismissed by the trial court upon sustaining a general demurrer to the complaint.

In reversing the judgment of the trial court in June, 1930 (*Aberdeen Savings & Loan Assn. v. Chase,* 157 Wash. 351, 289 Pac. 536, 290 Pac. 697, 71 A. L. R. 232), this court said:

"The question of whether or not the act which we are now considering imposes a tax upon appellants for the privilege of exercising their corporate powers within this state, or whether, on the other hand, *it purports to impose a tax directly upon property, to wit, upon the net income earned* by appellants upon which the amount of tax due is to be computed, or upon the occupation with which appellants are en-engaged, is important." (Italics mine.)

The decision was that it was a tax upon *property,* to wit, upon net income earned, and that the act in question violated the fourteenth amendment to the United States Constitution guaranteeing the equal protection of the law, which holding it was said rendered unnecessary any discussion of the subject of the uniformity of taxation provision of the state constitution. The decision was by six judges; three other judges dissenting in two opinions. Thereafter, on rehearing the case (157 Wash. 391), it was unanimously said:

"In order to clarify the situation, the court now states that the opinions above cited were rendered with a view to determining the questions presented by the cases at bar . . . ; that the majority of the court was of the opinion that the legislation therein attacked must be held, under the decisions of the supreme court of the United States, to attempt to *establish a property and not an excise or corporation franchise tax.*" (Italics mine.)

Amidst the general and special publicity of the fact that this court had thus decided that *income is property,* the fourteenth amendment to the state constitution was adopted at the following general election in November, 1930. That amendment struck out certain sections, including § 2 of article VII of the constitution, which section provided that "the legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the state, according to its value in money," etc. However, it was carried into amendment 14, which provides:

"All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. The word 'property' as used herein shall mean and include everything, whether tangible or intangible, subject to ownership."

And now, if asked whether income is property within the meaning of the fourteenth amendment to the state constitution, a perfect answer could be given by quoting the language of the amendment—"The word 'property' as used herein shall mean and include everything, whether tangible or intangible, subject to ownership." Thus, this court, in *Aberdeen Savings & Loan Ass'n. v. Chase,* 157 Wash. 351, 289 Pac. 536, 290 Pac. 697, 71 A. L. R. 232, decided that income is property for the purposes of taxation, and the people, by a constitutional amendment, thereafter decided likewise.

In this situation, the income tax law was passed at the general election in 1932, as initiative measure No. 69. Confessedly, the act upon its face fixes rates of taxation that become greater with the increase of the amount of taxable income. The amendment to the constitution provides, however, "that all taxes shall be *uniform* upon the same *class of property,"* etc. This principle of uniformity in taxation has been preserved at all times in our constitution, as appears from article VII, § 2, of the constitution, and from the fourteenth amendment. It might be reasonable, under the amendment, to provide that, for taxation purposes, horses be put in a class and bear a rate of taxation different from that of lands devoted to reforestation; but not so with a band of one thousand horses compared with another band of two thousand horses, nor one acre of land devoted to reforestation compared with other two acres of land devoted to reforestation.

The constitutional amendment speaks of the *same class of property.* One who pays a tax on a $2,000 taxable income pays a tax on precisely the same *class* of *property* as one who pays a tax on a $1,000 taxable income, and to tax the one at a progressively higher rate than the other positively violates the other clause of the amendment, that all taxes shall be *uniform* upon the same class of property.

The fact that some of the terms of the act prescribe personal penalties, if the owner of the property fails to perform his duties, does not, in my opinion, convert the act into one that operates *in personam.* The act is essentially one for the taxation of property for public revenue purposes. Section 1 in plain language says: *"There shall be assessed, levied, collected and paid annually a tax on all net income,"* etc.

The provisions of the act in question are prohibited

by the limitations contained in the fourteenth amendment to the state constitution.

MILLARD, J., concurs with MITCHELL, J.

STEINERT, J. (concurring)—I am in accord with the views expressed in the preceding opinions written by Judges Holcomb and Mitchell, respectively, except in so far as those opinions recognize and affirm the correctness of two of our recent decisions: *Pacific Tel. & Tel. Co. v. Seattle,* 172 Wash. 649, 21 P. (2d) 721, and *State ex rel. Hamilton v. Martin,* 173 Wash. 249, 23 P. (2d) 1. I dissented in both of those cases, and am still of the opinion that both of them were incorrectly decided.

With reference to the case now before us, there is but one question involved. We are not here concerned with an act relating to a uniform income tax, nor are we concerned with the wisdom, expediency or desirability of any particular kind of income tax. We are here concerned only with a graduated income tax act and its constitutionality.

Much argument of counsel has been devoted to an analysis of various decisions arising under the constitutions of other states and of the United States. Those decisions are of little aid to us here, because they rest upon peculiar constitutional provisions obtaining in those jurisdictions. Our problem is to determine the validity of the act before us in the light of our own constitution. A comparative examination of the constitution of this state at once reveals that it differs radically from those of other states in its provisions relative to taxation. It is *sui generis* in this respect.

The fourteenth amendment to our constitution provides that *all* taxes shall be *uniform* upon the same *class* of *property,* and that "property," as therein

used, shall *mean and include everything,* whether tangible or intangible, *subject to ownership.* Regardless of the precise definition of "income," it certainly is *something.* Whether it be tangible or intangible, it surely is *subject to ownership.* The income that an individual earns or receives is *his,* not some one's else. Having earned and received it, he is legally entitled to keep it, or else to use and dispose of it. In other words, he is entitled to exercise the rights of ownership over it. The word *"everything,"* of course, comprehends and includes the word *something.* It is even broader than the word *anything.* When we say *everything,* it is impossible to conceive of *something* or *anything* else beyond that. Had the constitution said that "property" shall include *something* or *anything* subject to ownership, those terms would certainly have included income. Did the constitution say less when it used the word *everything?* The question answers itself.

It might not be unwise, or even unfair, to tax the man who owns ten thousand acres of land at a *rate* different from that on which the owner of a hundred acres is taxed; but the constitution forbids it. Again, it might not be unwise, or even unfair, to tax the man who owns ten thousand head of cattle at a *rate* different from that on which the owner of a thousand head of cattle is taxed; but the constitution forbids it. And finally, it might not be unwise, or even unfair, to tax the man who has an income of ten thousand dollars at a *rate* different from that on which the man who earns only one thousand dollars is taxed; but the answer is the same—the constitution forbids it.

The lower court was correct in declaring the act in question unconstitutional.

BLAKE, J. (dissenting)—I dissent.

This is an appeal from a judgment of the superior court for Thurston county, holding unconstitutional

chapter 5, Laws of 1933—commonly known as the income tax act—being initiative measure No. 69. The holding is based on the theory that, under the fourteenth amendment to the state constitution, the tax imposed is a property tax, and, being graduated in relation to income, lacks uniformity, as defined in the amendment.

Before considering the amendment and its meaning, it is well to consider not only its historical background, but the social and economic condition of the state when article VII (which is repealed by the amendment) was written into the constitution.

In 1889 the major portion of the wealth of the state lay in its lands and their produce — agricultural, mineral and timber. Taxation was a fairly simple process. Its subjects were tangible, visible—easy to evaluate. The functions of government were also fairly simple. Relatively speaking, in those days the value of tangible property was great and the cost of government little. The burden of taxation was nothing compared to the benefits the owner of real property received as the result of his comparatively small contribution to the organized state, which protected him in his ownership and use of property.

But, even then, the economic complexion of the country was changing. More and more of the country's wealth was going into intangibles—into stocks, bonds, securities of various sorts—indicia of property which could easily elude the search of the tax collector. In the light of subsequent history, even then it should have been obvious that powers of taxation must be elastic. It was only a few years after the adoption of the state constitution (1894) that the income tax theory ran afoul of constitutional inhibition. *Pollock*

*v. Farmers Loan & Trust Co.*, 157 U. S. 429, 158 U. S. 601.

This, however, was a new state, whose vast resources of wealth that lay in and on the land seemed inexhaustible. After the depression of the middle nineties, a tide of immigration started, which continued until toward the end of the first decade of this century. As a result of this influx of people, and the still popular belief that wealth lay in the land, values of real property increased amazingly and kept relatively well ahead of increasing taxes. But in the latter part of that decade the tide of immigration began to ebb rapidly, and real property values receded with equal celerity.

In the meantime, due to a growing complexity in organic society, the state had been called upon to take over an ever-increasing burden of functions, and the cost of government had relatively increased. As long as property values were increasing, the additional tax burden went unnoticed. But when property values collapsed, the problem of taxation began to be acute—and for twenty odd years it has been increasing. The cry for reduction of taxes has become ever louder in the face of increasing cost of government.

The burden of taxation on real estate became more onerous during the second and third decades of this century by reason of several facts, among which were the following: (1) Great areas were allowed to revert to the municipalities for non-payment of taxes, and completely disappeared from the tax rolls; (2) as the burden of taxes on real property increased, capital sought investment in bonds, stocks and other securities, and escaped taxation entirely, or carried, at most, only a small portion of the burden.

A growing agitation for decrease in taxes developed. But the relief was not available, because the state

found itself in a strait-jacket in the shape of article VII of the constitution, with the judicial interpretations that had been placed upon it. The cry for relief became so loud, however, that the legislature, at the session of 1929, passed an act empowering the governor to appoint an investigating commission

" . . . to make a thorough and comprehensive study of the entire subject of taxation . . . and . . . report their findings and recommendations to the governor . . . to be by him transmitted to the legislature on the opening day of the next session."

As a result of these years of agitation and investigation of the subject, there was submitted to the people and adopted by them at the general election of 1930, what is now the fourteenth amendment to the constitution, which reads as follows:

"Article VII is amended by striking out all of sections 1, 2, 3 and 4, and inserting in lieu thereof the following, to be known as section 1:

"Art. VII, § 1. The power of taxation shall never be suspended, surrendered or contracted away. All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. The word 'property' as used herein shall mean and include everything, whether tangible or intangible, subject to ownership. All real estate shall constitute one class: *Provided*, That the Legislature may tax mines and mineral resources and lands devoted to reforestation by either a yield tax or an *ad valorem* tax at such rate as it may fix, or by both. Such property as the Legislature may by general laws provide shall be exempt from taxation. Property of the United States and of the state, counties, school districts and other municipal corporations, and credits secured by property actually taxed in this state, not exceeding in value the value of such property, shall be exempt from taxation. The Legislature shall have power, by appropriate legislation, to exempt personal property to the amount of three hundred ($300.00)

dollars for each head of a family liable to assessment and taxation under the provisions of the laws of this state of which the individual is the actual bona fide owner.''

As I see it, the real question presented on this appeal is whether, by construction of this amendment, we are going to thwart the effort of the state to throw off the strait-jacket in which it was bound. To do so requires a literal, technical construction of a few words of the amendment, in perversion of their true and obvious intent and purpose and in total disregard of its historical background and the conditions which brought it into being.

Before proceeding with the discussion of the constitutionality of the act, it is necessary to note one more step in the eventful history of taxation in this state. At the general election of 1932, the people not only passed this income tax bill, but they passed an act limiting the levy of taxes on real estate to forty mills on the dollar. The relief of real property is at last achieved, but at what cost—if the income tax act is held invalid? The consequences are too obvious for discussion. They, however, are only of general interest; we are concerned merely with the legal aspects of the situation. It is no concern of ours that the revenues from taxation on real property will be insufficient to support the government and the schools, even though the cost of the former is reduced twenty-five per cent and the latter thirty-three and one-third per cent. For, as we proceed, it will appear that, if this income tax is unconstitutional, the state will have no other source of substantial revenue than from taxes on real property. In addition, of course, there will be inconsequential revenues from taxes on tangible personal property and licenses imposed under the police power. All excise taxes for revenue will be obliterated.

The argument in support of the attack on the income tax act, briefly stated, is this: (a) That the fourteenth amendment permits classification of property for purposes of taxation, but requires uniformity of taxation on property within a given class; (b) that the amendment defines property to be anything, tangible or intangible, subject to ownership; (c) that income is subject to ownership; (d) that income is therefore property constituted in *one class*; (e) that a graduated income tax, classifying taxpayers in groups according to the amount of their income, violates the rule of uniformity, and the act is therefore unconstitutional.

The syllogism seems perfect, but, as I see it, there are two answers to it: (1) That, notwithstanding the definition of property contained in the amendment, the exaction imposed under the income tax law is an excise and not a property *tax;* (2) that, if it is a property tax, the classifications fixed by the act are within the constitutional limitations of the fourteenth amendment.

(1) It does not follow, from the broad definition of property contained in the amendment, that this is a property tax. To so reason seems to me to be sheer sophistry. The fundamental character of a tax cannot be changed by legislative declaration. That which was a tax on property prior to the fourteenth amendment remains a property tax; and that which was an exaction for the enjoyment of privileges, made possible by the protection of the organized state, remains an excise tax.

The decisions defining and distinguishing property and excise taxes are in hopeless confusion, due in part to differences in constitutional provisions under consideration, but due mainly to a failure to apprehend the generic differences between the two. The distinc-

tion is tersely stated in *Hattiesburg Grocery Co.. v. Robertson,* 126 Miss. 34, 88 So. 4, 25 A. L. R. 748:

"Income is necessarily the product of the joint efforts of the state and the recipient of the income, the state furnishing the protection necessary to enable the recipient to produce, receive, and enjoy it, and a tax thereon in the last analysis is simply a portion cut from the income and appropriated by the state as its share thereof, and, while a tax on income includes some of the elements both of a tax on property and of a tax on persons, it cannot be classified as strictly a tax on either, for it is generically and necessarily an excise, and should be enforced as such unless and until so to do would accomplish the result which section 112 of the Constitution was adopted to prevent, which is to prevent discrimination in the taxation of property, so that all property shall bear its due proportion of the burdens of government."

Judge Cooley, in § 1723, volume IV (4th ed.) of his work on Taxation, makes a statement pertinent to the situation, with which we are confronted, both as to the character of an excise and the effect of legislative declarations relating to them.

"§ 1723. An inheritance tax is an excise and not a property tax. However, a statute may, in name, be one imposing a tax on the right of succession, and, in reality, be one on the property passing. In other words, the title of the legislative act cannot always be taken as conclusive of the character of the tax imposed. An inheritance tax is not a tax on property merely because the amount of the tax is made to depend upon the value of the property transmitted, nor because the tax is made a lien on the property the succession of which is taxed."

Measured by these standards, what is the exaction imposed by initiative No. 69? Without going into the provisions of the act in too much detail, it is well to note, in a general way, its contents. It is long, but excellently drawn—clear, hardly susceptible of miscon-

struction, either by courts or administrative officials. It is subject only to the general objection that all taxes are obnoxious—so well answered by the supreme court of Missouri:

"That the tax in question was exceedingly onerous is undoubted; but it may be said that there is nothing very poetical or romantic about tax laws, at best. They are exacting and remorseless, and do not discriminate with any particular nicety as to individual convenience. But mere oppressiveness is no ground for setting them aside or arresting their operation." *Glasgow v. Rowse,* 43 Mo. 479.

Section 1 of the act provides that:

"There shall be assessed, levied, collected and paid annually, a tax on all net income, as hereinafter provided, by every person residing within the state . . ."

Section 2 defines persons and income.

Section 3 provides for deductions to be allowed corporations.

Section 4 provides for deductions to be allowed persons other than corporations.

Section 5 provides for exemptions: (a) of income received from various and certain specified sources; (b) individuals and heads of families.

Section 6 prescribes the rates for computation of the tax.

Section 7 provides for the personnel necessary for the administration of the act.

Section 8 authorizes the state tax commission to make rules and regulations looking to the enforcement of the act and not in conflict therewith. It also provides for the making of return by the taxpayer and provides certain penalties for failure to make return, subdivision (12) of the section providing:

"Any person, other than a corporation, who fails or refuses to make a return at the time hereinbefore spec-

ified in each year or shall render a false or fraudulent return shall upon conviction be fined not to exceed five hundred dollars, or be imprisoned not to exceed one year, or both, at the discretion of the court, together with the cost of prosecution.''

Section 9 provides for the making of returns by administrators, executors, guardians and trustees of estates, and the levy of the impost on such estates.

Section 10 provides for the collection of the tax, time of payment and remedies for failure (which is by the same method as the levy of a general execution on a judgment of a court of record). It also provides a method for contest of the amount of the tax by the taxpayer; and also for recovery of overpayment.

Section 11 authorizes the tax commission to make investigation of the taxpayer's records in such cases as it deems advisable.

Section 12 provides that no additional assessment shall be made without notice to the taxpayer and hearing if demanded by him.

Section 13 provides for the setting up of a board of review in each county, consisting of three persons, whose function it is to hear grievances of taxpayers and of representatives of the tax commission.

Section 14 contains certain prerequisites to actions which may be brought by the taxpayer.

Section 15 provides for appeal to the state tax commission from decisions of county boards of review.

Section 16 provides for appeal to and review by the courts.

Section 17 provides for refunds.

Section 18 relates to taxpayers deriving income from sources both within and without the state.

Section 19 relates to the disposition of the revenues derived from the tax.

Section 20 relates to administrative features of enforcement.

Section 21 relates to the correction of assessments.

Section 22 relates to evasions by corporations.

Section 23 provides that the holding that any portion of the act is unconstitutional shall not render the rest of the act invalid.

Section 24 prohibits the publication of individual returns, but provides for the publication of statistics, and the inspection of returns by the attorney general.

Section 25 provides for the appropriation of $15,000 for paying expenses incurred in the administration of the act.

Section 26 provides that the act shall be operative on incomes received in 1932.

This somewhat detailed review of the provisions of the act is primarily for the purpose of showing that it has nothing whatever to do with property in the generally accepted definition of the term. It operates entirely *in personam*. It requires the taxpayer to *act*. It charges *him*, not his *property*. And if he does not *act* in accordance with the terms imposed upon him, *he* is subject to penalty—fine and imprisonment. No lien attaches to any particular property. His property is not seized or sequestered, except upon what is the equivalent of an execution issued on a judgment against him *in personam*.

He pays for the privilege of being able to enjoy his property, which he *can* enjoy only under the protection of the organized state. And he pays according to the degree of benefit he derives from that protection. If he enjoys little, he pays little. If he enjoys much, he pays (relatively not much) more.

While the act requires every person receiving an income in excess of eight hundred dollars to make a return, the head of a family is not required to pay a

tax (providing he is a home owner) until his income reaches the sum of four thousand dollars, for he is allowed to deduct from the tax due $17.50 as a personal exemption and $50 on account of taxes paid on his home.

Let us consider another example or two. Take a head of family and home owner whose income is ten thousand dollars a year. Computation shows his assessment to be $282.50. Deduct $17.50 personal exemption and $50 for taxes paid on his home. He pays a tax of $215. Take a man whose income is twenty thousand dollars per year. Computation shows his assessment to be $957.50. Allow the deductions, and the tax paid is $890. Is this too high a price for him to pay in support of the state, by the grace only of whose protection he is guaranteed the enjoyment of such an income? Is this a lack of equality and uniformity in taxation? If the tax is an excise, it certainly is not.

And this court has very recently held that such a tax is an excise. *Pacific Tel. & Tel. Co. v. Seattle,* 172 Wash. 649, 21 P. (2d) 721. There the question involved was as to whether an ordinance of the city of Seattle, which levied a tax based on gross revenues of various public service corporations, contravened the constitution. The ordinance provided a different rate on corporations operating in different fields, but the rate was the same on corporations operating in the same field. We held the tax was an excise and that the classifications were not arbitrary or unreasonable.

I can see no distinction in principle between the tax involved in that case and the one under consideration here. If a tax on gross revenue is an excise, a tax on net income must be. I fail to see any distinction between them in operation or result. Furthermore, if a city, the creature of the state, whose power to tax is

limited strictly within the grant of power from the state, may impose an excise, I fail to see why the state itself, whose power to tax is limited only by express constitutional prohibition, may not levy such a tax.

I have refrained from discussing decisions of courts of other states, because, as pointed out by counsel for respondents, they deal, for the most part, with constitutional provisions so different from ours that they cannot be deemed authority for sustaining initiative No. 69. There is one case, however, decided since this case was first argued, which deals with a constitutional provision defining "property" in even more comprehensive terms than our own fourteenth amendment. *O'Connell v. State Board of Equalization*, 25 P. (2d) (Mont.) 114. There the supreme court of Montana had under consideration a graduated income tax law, enacted by the legislature under a constitutional provision defining property as follows:

"Article XII, § 17: The word *property* as used in this Article is hereby declared to include moneys, credits, bonds, stocks, franchises, and all matters and things (real, personal and mixed) capable of private ownership, but this shall not be construed so as to authorize the taxation of the stocks of any company or corporation when the property of such company or corporation represented by such stocks is within the state and has been taxed."

The court said:

"It is not necessary for us to declare the exact nature of the income tax under consideration. It is apparent that the legislature of the state of Montana intended to enact an income tax and did not intend that it should be considered as a property tax law. It is also apparent that the legislature by the adoption of the statute from the state of Idaho, took the statute with the Idaho construction, which was to the effect that it was an excise tax. It is also further apparent that if the definition of 'property' contained in section

17 of Article XII is to be given the effect as expressed by this court in *Hilger v. Moore, supra,* then the argument of plaintiff that the Act imposes a property tax falls to the ground.

"It is important to note that if section 17, *supra,* does not limit the legislature in the particular under consideration, then the general power of the legislature to enact legislation, as discussed earlier in this opinion, comes into effect, and the legislature, in the absence of the restriction, was just as free in that particular as was the Idaho legislature under its permissive constitutional authority. In that event the legislature was free to enact Chapter 181, and it follows that the provisions of section 1 and section 17 of Article XII are not prohibitive, because the same degree of uniformity is not required in the case of an excise tax or in the case of an income tax statute that is required in one providing for a levy upon 'property.' *(Hale v. County Treasurer,* 82 Mont. 98, 265 Pac. 5; *Quong Wing v. Kirkendall,* 39 Mont. 64, 101 Pac. 250; s. c. 233 U. S. 59, 56 L. Ed. 350, 32 S. Ct. 192.)"

Of course, this decision carries no binding force upon this court. But if the principle, that legislative enactments are to be upheld unless their invalidity is apparent beyond all reasonable doubt, is to be adhered to, it brings to us a persuasive power well nigh irresistible. The disagreement of courts and judges on identical problems seems to afford the highest proof that "reasonable doubt" does exist.

(2) Let us assume, however, that the character of the tax has been changed by this broad definition of property; that the declaration in the fourteenth amendment has converted an exaction for the enjoyment of a personal privilege from an excise to a property tax. Still, the income tax act is not beyond the pale of its limitations. It must always be borne in mind that the state constitution is not a grant of power; it is a limitation. The theory is that the power of government is in the people, and that the legislature,

representing the people, has all the powers of government inherent in the people, except such as are specifically withheld. In this case, it is particularly important to remember this principle, because the act under attack was enacted by the people themselves as initiative measure No. 69. So the essence of this phase of the question is: Have the people, by the enactment of the fourteenth amendment, *placed a limitation upon their own inherent power of taxation,* which renders them impotent to impose an income tax upon themselves?

It cannot be gainsaid that the purpose of the amendment was to remove limitations on the taxing power, as defined in article VII. The latter was archaic, but under it the state had power to levy excises for revenue. This right had been consistently sustained by this court, from *Fleetwood v. Read,* 21 Wash. 547, 58 Pac. 665, 47 L. R. A. 205, to *Pacific Tel. & Tel. Co. v. Seattle,* 172 Wash. 649, 21 P. (2d) 721. Can it be possible that, by defining as property everything capable of ownership, the people intended to destroy this lucrative source of revenue? Patently, they did not.

Of course, citation of cases is not necessary in support of legislative authority to classify persons in groups for the purposes of exacting excise taxes from them. The only limitation is that the classification shall not be unreasonable or arbitrary. And the courts will not weigh with too much nicety the legislative discretion in that respect. *State Board of Tax Commissioners v. Jackson,* 283 U. S. 527, 73 A. L. R. 1464.

While the amendment placed a limitation of uniformity of taxation on property in the same class, it placed but one limitation (and that qualified) on the power of classification. Reverting to the terms of the amendment, we find four elements in the body of it— prohibitory, declaratory and mandatory. They are:

(1) "The power of taxation shall never be suspended, surrendered or contracted away" (distinctly prohibitory) ; (2) "taxes shall be uniform upon the same class of property" (mandatory) ; (3) property "shall mean and include everything, whether tangible or intangible, subject to ownership" (declaratory) ; and (4) "all real estate shall constitute one class" (mandatory). Those subdivisions constitute the essence of the amendment. I fail to see wherein there is any limitation contained therein to classify property for purposes of taxation, other than that real estate shall constitute one class. It goes without saying that the amendment was adopted, holding in view the judicial interpretation and limitation of article VII. If that be true, and if the purpose of the amendment was to broaden, rather than restrict, the power of taxation, it is sacrificing substance to form to so construe the amendment as to deprive the state of a source of revenue which it had before its adoption.

This phase of our problem was presented to and met by the supreme court of Missouri in *Ludlow-Saylor Wire Co. v. Wollbrinck,* 275 Mo. 339, 205 S. W. 196. It was there said:

"The appellant contends that the act under review (Laws 1917, p. 524, *et seq.)* in taxing incomes, thereby imposed a tax on property in contravention of Section 4, *supra,* in that by the terms of the act the tax was not laid in proportion to value. . . .

"In law and in the broadest sense 'property' means 'a thing owned,' and is, therefore, applicable to whatever is the subject of legal ownership. It is divisible into different species of property, including physical things, such as lands, goods, money; intangible things, such as franchises, patent rights, copyrights, trademarks, trade names, business good will, rights of action, etc. In short it embraces anything and everything which may belong to a man and in the ownership of which he has a right to be protected by law. The

court held, in effect, that in directing as the Constitution does, that taxes on property should be levied according to value, reference was intended to be made to other species of property than that which a person has in his income; that the Constitution did not abridge the power of the Legislature to provide revenue by a taxation of income; that its command was directed to other and distinct classes of property which (on account of their peculiar nature *could be measured in value)* become the object of taxation *independent of the owner,* and are susceptible, by proper procedure, to lien or seizure for the enforcement of the tax. The court held that it was property having such a nature and characteristics, and not the mere usufruct of such property, nor the earnings of physical or mental labor, which was referred to in the clause under review and intended thereby to be subjected to taxation according to its value. . . .

"It may be that the construction of the word 'property' which has appeared as definitive of the subject of *ad valorem* taxation in all of the three constitutions of this state when originally made, was not in full accord with the broadest possible meaning of that term, in that literally it might include every species of property. But that was not a compellable view, and the restricted construction (which excluded from its purview personal earnings and incomes) had been affixed to this term six years prior to the adoption of the Constitution of 1875, and the principle of that construction has since been applied in sustaining taxes of a similar nature, although levied without proportioning the taxation to the value of the thing taxed. . . .

"That income is property because it is an ownable thing, is a matter of simple apprehension which has been affirmed under the definition of property above stated. That it is, 'in effect' a taxation of the labor or capital which produced it, may be conceded, since by reaction it affects the value of the thing or things from which it is derived. But none of these considerations alter the fact that incomes are distinguishable from the tangible or intangible property yielding them, nor do they affect the established law in Missouri, that incomes are thus connoted by our Constitution and de-

cisions. These recognize incomes as one of the classes entering into the concept of property not required to be taxed in proportion to value, and, therefore, not falling within the designation of property which the Legislature is forbidden to tax except in that way; and (as a consequence of the plenary power of that body to raise revenue at will, absent a constitutional prohibition) falling wholly within the scope of the authority of the Legislature to impose taxes for the sustenance of the State without measuring its impose by the value of the thing taxed. Taxation of incomes, therefore, does not offend Section 4 of Article 10 of the Constitution of 1875. . . .

"In the act under review it is not even contended (conceding the power to levy the tax) that the provisions distinguishing the persons and grading the tax to be paid in accordance with such distinctions, are not founded in reason, in justice and for the utility of the public—the true criteria which should govern all legislative action. Indeed the essential justice of the various classifications of the act seems to be evident. Practically identical gradations of tax, classifications of persons, etc., are contained in the Federal act which is the pattern of the Missouri law, and are set forth in the discriminations found to exist in the acts of many other states of the Union and the most enlightened nations of the world."

While the constitutional provision considered in that case was not the same as that contained in the fourteenth amendment, the question raised under it was identical with the one here presented. The decision is of peculiar importance to the solution of the problem here presented, in that it makes clear that the fourteenth amendment must be construed in the light of the law as it existed, under the decisions of this court, at the time the amendment was adopted. In the *Telephone Co.* case, *supra,* we sanctioned a tax in no essential element distinguishable from the exaction here questioned, and we based that holding on a line

of decisions extending over a period of thirty years prior to the adoption of the amendment. The *Telephone Co.* case was decided subsequent to the adoption of the fourteenth amendment. By implication, at least, the court, by that decision, held that existing methods and forms of taxation were in no wise impaired by the terms of the amendment.

Conceding the exaction imposed by the income tax act to be a property tax, the amendment still leaves to legislative discretion and determination the classification of persons and subject matter to which the act applies. So whether the tax imposed be considered an excise or a property tax, it in no wise runs counter to any prohibitory or mandatory provision of the fourteenth amendment.

The judgment, in my opinion, should be reversed.

BEALS, C. J., TOLMAN, and GERAGHTY, JJ., concur with BLAKE, J.