IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| S. MICHAEL KUNATH, | ) | No. 79447-4-I |
| Respondent/Cross Appellant, | ) | |
| v. | ) | |
| CITY OF SEATTLE, | ) | |
| Appellant/Cross Respondent, | ) | |
| ECONOMIC OPPORTUNITY INSTITUTE, | ) | |
| Appellant/Cross Respondent, | ) | |

SUZIE BURKE, an individual; GENE BURRUS and LEAH BURRUS, as individuals and the marital community comprised thereof, PAIGE DAVIS, an individual; FAYE GARNEAU, an individual; KRISTI DALE HOOFMAN, an individual; LEWIS M. HOROWITZ, an individual; TERESA JONES and NIGEL JONES, as individuals and the marital community comprised thereof; NICK LUCIO and JESSICA LUCIO, as individuals and the marital community comprised thereof; LINDA R. MITCHELL, an individual; ERIKA KRISTINA NAGY, an individual; DON ROOT, an individual; LISA STERRITT and BRENT STERRITT, as individuals and the marital community comprised thereof; and NORMA TSUBOI, an individual,

Respondents,

v.                                          )
                                            )
CITY OF SEATTLE, a municipality; SEATTLE    )
DEPARTMENT OF FINANCE AND                   )
ADMINISTRATIVE SERVICES, a department       )
of the City of Seattle; and FRED PODESTA,   )
Director of the Seattle Department of Finance )
and Administrative Services, in his official )
capacity,                                   )
                                            )
                           Appellants.      )
_____)
                                            )
DENA LEVINE, an individual,                 )
CHRISTOPHER RUFO, an individual;            )
MARTIN TOBIAS, an individual; NICHOLAS      )
KERR, an individual; CHRIS MCKENZIE, an     )
individual,                                 )
                                            )
                           Respondents,     )
                                            )
        v.                                  )
                                            )
CITY OF SEATTLE, a municipal corporation,   )
                                            )
                           Appellant.       )
_____)
                                            )
SCOTT SHOCK; SALLY OLJAR; STEVE             )
DAVIES; JOHN PALMER,                        )
                                            )
                           Respondents,     )
                                            )
        v.                                  )     PUBLISHED OPINION
                                            )
CITY OF SEATTLE, a Washington               )
municipal corporation,                      )
                                            )     FILED: July 15, 2019
                           Appellant.       )
_____)

VERELLEN, J. — Whether the income tax levied by the city of Seattle is statutorily authorized and constitutional depends on the precise nature of the tax. For decades, scholars have debated whether an income tax is a property tax, an excise tax, or its own separate category of tax.[1] In a series of decisions dating back to 1933, the Washington Supreme Court has unequivocally held income is property, a tax on income is a tax on property, taxes on property must be uniformly levied, and a graduated income tax is not uniform. Therefore, the Washington Constitution bars any graduated income tax.[2]

Here, the superior court ruled Seattle did not have statutory authority to enact its graduated income tax. Seattle and the Economic Opportunity Institute (EOI) initially sought review in our Supreme Court, arguing in part that the Supreme Court should reconsider the precise nature of an income tax. The Supreme Court transferred the appeal to this court. We are constrained by stare decisis to follow our Supreme Court's existing decisions that an income tax is a property tax. We have no authority to overrule, revise, or abrogate a decision by our Supreme Court.

We conclude Seattle has the statutory authority to adopt a property tax on income, but our state constitution's uniformity requirement bars Seattle's graduated income tax. Therefore, the Seattle income tax ordinance is unconstitutional.

---

[1] See, e.g., Robert C. Brown, The Nature of the Income Tax, 17 MINN. L. REV. 127 (1933).

[2] Power, Inc. v. Huntley, 39 Wn.2d 191, 194, 235 P.2d 173 (1951) (quoting Culliton v. Chase, 174 Wash. 363, 374, 25 P.2d 81 (1933)); Jensen v. Henneford, 185 Wash. 209, 53 P.2d 607 (1936).

FACTS

Seattle enacted an ordinance in July of 2017 imposing an income tax on high-income residents.[3] Seattle "imposed a tax on the total income of every resident taxpayer in the amount of their total income multiplied by" 2.25 percent for all income above a certain threshold.[4] The ordinance defines "total income" as "the amount reported as income before any adjustments, deductions, or credits on a resident taxpayer's United States individual income tax return for the tax year, listed as 'total income' on line 22 of Internal Revenue Service Form 1040."[5]

The tax creates two classes of taxpayers: individuals filing singly and married taxpayers filing jointly.[6] The tax subdivides each class based on income. Individual taxpayers earning more than $250,000 and married taxpayers earning more than $500,000 must pay 2.25 percent of all income over those thresholds.[7] To illustrate, a family earning $600,000 would pay $2,250 in taxes, which is 2.25 percent of $100,000.

---

[3] Ch. 5.65 SEATTLE MUNICIPAL CODE (SMC).

[4] SMC § 5.65.030(B).

[5] SMC § 5.65.020(G). Taxpayers filing Form IRS 1040A, Form 1041, and the like would calculate their payment based on the equivalent line. Id. Total income is now line 6 on the 2018 version of Form 1040. Schedule 1 for the 2018 version of Form 1040 tabulates total income using the same lines as the former Form 1040.

[6] SMC § 5.65.030(B). Each class includes similarly situated taxpayers. For example, the tax classifies a married taxpayer filing separately with an unmarried taxpayer filing individually. Id.

[7] SMC § 5.65.030(B).

The Dana Levine group of plaintiffs, the Suzie Burke group, the Scott Shock group, and individual Michael Kunath (tax opponents)[8] filed four separate lawsuits to enjoin enforcement of the ordinance.[9] The court granted EOI's motion to intervene as a defendant and consolidated the lawsuits.[10]

The superior court granted summary judgment for the tax opponents, concluding no statute gave Seattle the authority to levy an income tax and, even if Seattle otherwise had the authority, RCW 36.65.030 prohibited it from levying a net income tax.[11] The court also denied EOI's constitutional challenges to RCW 36.65.030. Having resolved the case on statutory grounds, the court declined to rule on Shock's remaining equal protection challenges to the ordinance.[12] Kunath then moved to sanction Seattle and EOI under Civil Rule 11 and for an award of attorney fees under the common fund doctrine.[13] The court denied both motions.[14]

Seattle and EOI appeal the court's grant of summary judgment, and Kunath cross appeals the court's denial of his motions for sanctions and attorney fees.

---

[8] For clarity, we refer by name to arguments made by an individual party where only that party advanced the argument.

[9] Clerk's Papers (CP) at 1, 1608, 1629, 1658.

[10] CP at 74-75, 247-51, 1713-14.

[11] CP at 1305-13, 1318.

[12] CP at 1313-18.

[13] CP at 1320, 1365.

[14] CP at 1544, 1548.

ANALYSIS

I. Background

After 1930, article VII, section 1 of our state constitution has required that "[a]ll taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. The word 'property' as used herein shall mean and include everything, whether tangible or intangible, subject to ownership."[15]

Our Supreme Court's first opportunity to interpret this language came in the 1933 case of Culliton v. Chase.[16] That year, voters passed a statewide initiative levying a graduated tax on net income.[17] Taxpayers challenged the initiative, arguing the graduated income tax was unconstitutional because it taxed property and therefore violated the recently-enacted uniformity clause in article VII, section 1.[18] In declaring the tax unconstitutional, the Culliton court first distinguished income taxes from excise taxes, reasoning that excise taxes are levied on an activity—such as the sale, consumption, or manufacture of goods—or upon a privilege or license granted by the state.[19] The court also distinguished income taxes from estate taxes,

---

[15] This language was added by constitutional amendment 14. Additional amendments to article VII, section 1 do not affect the language relevant here.

[16] 174 Wash. 363, 387-88, 25 P.2d 81 (1933) (Blake, J. dissenting) (discussing the recent history of article VII, section 1 and income taxation in the state).

[17] Id. at 371, 372.

[18] Id. at 373.

[19] Id. at 377.

reasoning that an estate tax "is not really a tax at all" because "[i]t is an impost laid but one time" on the state-granted right of heirs "to take" from an estate.[20]

Turning to the "comprehensive definition of 'property'" in the constitution, the court classified income as intangible property, stating, "Income is either property under [article VII, section 1], or no one owns it."[21] "The overwhelming weight of judicial authority is that 'income' is property and a tax upon income is a tax upon property."[22] Because any income tax in Washington had to be uniform or be unconstitutional,[23] the graduated income tax was unconstitutional under article VII, section 1.[24]

Three years later, the court again considered a net income tax in Jensen v. Henneford.[25] The State levied a graduated income tax on "'every resident of [Washington] for the privilege of receiving income therein while enjoying protections of its laws.'"[26] Based on that language, the State argued it levied an excise tax not subject to the constitution's uniformity clause.[27] But "[t]he character of a tax is determined by its incidents, not by its name."[28] Because Culliton established that the broad definition of property in article VII, section 1 encompassed income, the Jensen

---

[20] Id. at 378.

[21] Id. at 374.

[22] Id.

[23] Id. at 379.

[24] Id. at 378-79.

[25] 185 Wash. 209, 53 P.2d 607 (1936).

[26] Id. at 212 (emphasis omitted) (quoting LAWS OF 1935, ch. 178, § 2).

[27] Id. at 215, 217.

[28] Id. at 217.

court held the purported excise tax was an income tax subject to the uniformity clause in article VII, section 1.[29] Because the taxing scheme taxed income below $4,000 at three percent and income above $4,000 at four percent, it was an unconstitutional nonuniform tax on property.[30]

In 1951, Power, Inc. v. Huntley evaluated a statewide "corporation excise tax" that levied a four percent tax on a corporation's net income "for the privilege of exercising its corporate franchise in this state or for the privilege of doing business in this state."[31] The tax did not apply to sole proprietorships or partnerships.[32] The central question before the court was whether the tax fell on income rather than being a true excise. If a tax on income, then it violated the uniformity clause of article VII, section 1 by only affecting certain forms of corporations and not other companies in competition with them.[33] The Power court set aside the language of the tax, analyzed its incidents, and concluded it was "a mere property tax masquerading as an excise."[34] Under the taxing scheme, a Washington corporation with zero net income would not pay any income tax, while a foreign corporation doing business in Washington would pay taxes on activities unconnected to the privilege of conducting business in Washington.[35] Also, the scheme hewed closely to federal corporate

---

[29] Id. at 219-20.

[30] Id. at 220.

[31] 39 Wn.2d 191, 193, 235 P.2d 173 (1951).

[32] Id. at 195.

[33] Id.

[34] Id. at 196 (internal quotation marks omitted).

[35] Id. at 196-97.

income tax law, illustrating its true nature as an income tax. The court concluded the tax was a nonuniform property tax and therefore unconstitutional.[36]

We consider the statutory and constitutional issues in this case within the clear bounds of these precedents.[37] "It is no longer subject to question . . . that income is property."[38] Taxes are to be evaluated by their incidents rather than by their legislative designation.[39] And a net income tax, whether levied on a corporation or a natural person, must be uniform to comply with article VII, section 1 of our constitution.[40]

## II. Justiciability

Before addressing the tax's statutory and constitutional validity, we must address Shock's threshold contention that these issues are nonjusticiable political questions.[41] Shock contends, "The City's request that this Court reverse nearly a century of case law holding that income is personal property, and therefore subject to the Constitution's uniformity tax requirement, is not appropriate for judicial determination."[42] But it is well settled that Washington courts have the power to hear

---

[36] Id.

[37] See 1000 Virginia Ltd. P'ship v. Vertecs Corp., 158 Wn.2d 566, 578, 146 P.3d 423 (2006) ("When the Court of Appeals fails to follow directly controlling authority by this court, it errs.").

[38] Power, 39 Wn.2d at 194 (citing Culliton, 174 Wash. at 374).

[39] Jensen, 185 Wash. at 217.

[40] Power, 39 Wn.2d at 195 (citing WASH. CONST. art. VII, § 1); Jensen, 185 Wash. at 219; Culliton, 174 Wash. at 374.

[41] Lee v. State, 185 Wn.2d 608, 616, 374 P.3d 157 (2016).

[42] Shock Resp't's Br. at 9.

constitutional challenges to tax laws,[43] which is why we are guided by "nearly a century of case law" on these issues. The issues raised in this case are justiciable.

III. Standard of Review

We review summary judgment orders and questions of constitutional and statutory interpretation de novo.[44] We interpret statutes and ordinances to discern and implement the legislative body's intent.[45] We give effect to a statute's plain meaning as a statement of legislative intent.[46] A statute's plain meaning can be discerned from the language of the statute itself, other provisions of the same act, and related statutes.[47] Terms in a statute are read with their common and ordinary meaning, absent ambiguity or a statutory definition.[48] A dictionary can supply an undefined term's ordinary meaning.[49] "'Only when the plain, unambiguous meaning

---

[43] See Lee, 185 Wn.2d at 616 (citing WASH. CONST. art. IV, § 4; RCW 2.04.010) (Supreme Court has jurisdiction over constitutional and statutory challenges to statutes); RCW 2.06.030 (Supreme Court can transfer cases to the court of appeals); see also WASH. CONST. art. IV, § 6 (superior courts have original jurisdiction over "the legality of any tax").

[44] Sheehan v. Cent. Puget Sound Reg'l Transit Auth., 155 Wn.2d 790, 796-97, 123 P.3d 88 (2005).

[45] Watson v. City of Seattle, 189 Wn.2d 149, 158, 401 P.3d 1 (2017); Sheehan, 155 Wn.2d at 797.

[46] Sheehan, 155 Wn.2d at 797 (quoting Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)).

[47] Id. (quoting Campbell & Gwinn, 146 Wn.2d at 10); Washington Pub. Ports Ass'n v. State, Dep't of Revenue, 148 Wn.2d 637, 647-48, 62 P.3d 462 (2003) (citing Campbell & Gwinn, 146 Wn.2d at 11-12).

[48] HomeStreet, Inc. v. State, Dep't of Revenue, 166 Wn.2d 444, 451, 210 P.3d 297 (2009).

[49] Id.

cannot be derived through such an inquiry will it be appropriate [for a reviewing court] to resort to aids to construction.'"[50]

## IV. Statutory Taxing Authority

Washington municipalities have no inherent power to levy taxes because our constitution vests that power with the legislature.[51] But the constitution authorizes legislative delegations of taxing power to municipalities. Under article VII, section 9, the legislature can delegate power to municipalities "to make local improvements by special assessment." Article XI, section 12 both prohibits the legislature from levying local taxes for "municipal purposes" and empowers the legislature to enact "general laws" that "vest in [municipalities] the power to assess and collect taxes" for municipal purposes. These constitutional provisions are not self-executing, however, so the legislature must grant taxing authority to the municipality.[52] Municipal taxes enacted without delegated authority are invalid.[53]

RCW 35.22.280(2) explicitly grants first-class cities authority to levy a property tax on real or personal property for municipal needs.[54] Under Culliton and its

---

[50] Sheehan, 155 Wn.2d at 797 (alteration in original) (internal quotation marks omitted) (quoting Campbell & Gwinn, 146 Wn.2d at 12).

[51] City of Spokane v. Horton, 189 Wn.2d 696, 702, 406 P.3d 638 (2017) (citing WASH. Const. art. I, § 1; State ex rel. King County Tax Comm'n, 174 Wash. 668, 671, 26 P.2d 80 (1933)).

[52] King County v. City of Algona, 101 Wn.2d 789, 791, 681 P.2d 1281 (1984); Carkonen v. Williams, 76 Wn.2d 617, 627, 458 P.2d 280 (1969).

[53] Watson, 189 Wn.2d at 166-67.

[54] Seattle's municipal needs include addressing homelessness, providing affordable housing, education, and transit, and providing funding for mental health and public health services. SMC § 5.65.010(A).

11

progeny, an income tax is a property tax.[55] Thus, Seattle's income tax was authorized by RCW 35.22.280(2). At oral argument, tax opponents asserted RCW 35.22.280(2) did not authorize Seattle's tax because income is a form of intangible property rather than real or personal property. But personal property can be intangible,[56] and income is intangible property under our constitution.[57] Accordingly, Seattle possessed valid statutory authority to levy a property tax on income.[58]

---

[55] E.g., Jensen, 185 Wash. 216 (explaining that "income is property, and that an income tax is a property tax, and not an excise tax").

[56] RAY ANDREWS BROWN, WALTER B. RAUSHENBUSH, THE LAW OF PERSONAL PROPERTY § 8.1, at 154 (3rd ed. 1975) (explaining that "the major part of what today constitutes personal property . . . consists of so-called choses in action"); see Heermans v. Blakeslee, 97 Wash. 647, 648-49, 167 P. 128 (1917) (holding that an assignment of the right to receive income is assignment of a chose in action); In re Marriage of Kraft, 61 Wn. App. 45, 49 n.2, 808 P.2d 1176 (1991) (explaining the right to receive income can be a chose in action); see also State of Cal. v. Tax Comm'n of State, 55 Wn.2d 155, 158, 346 P.2d 1006 (1959) ("Corporate shares of stock are personal property.").

[57] Culliton, 174 Wash. at 374 (for our constitution's taxation provisions "incomes necessarily fall within the category of intangible property"). In addition, as tax opponents acknowledged at oral argument, our constitution does not prohibit taxes on income so long as those taxes are uniform. See id. at 379 ("It may be possible to frame an income tax law which will assess all incomes uniformly and comply with our [c]onstitution.").

[58] Of course, neither Seattle nor EOI argued for the applicability of RCW 35.22.280(2) because both contend that the income tax is not a property tax at all. The starting point for our analysis has to be the binding precedent that a tax on income is a tax on property.

In a statement of additional authorities, tax opponents point us to a statute excluding "intangible personal property" from ad valorem taxes. RCW 84.36.070(1). The premise of the tax opponents' contention appears to be that any tax on income is a prohibited ad valorem tax on intangible personal property. But this premise is inconsistent with the statute's text and legislative history. First, RCW 84.36.070 has never listed "income" as intangible property. RCW 84.36.070(2); LAWS OF 1931, ch. 96, § 1. Second, the legislature enacted RCW 84.36.070 in 1931 following the passage of amendment 14 to article VII, section 1, which allowed taxation of intangible personal property. State ex rel. Atwood v. Wooster, 163 Wash. 659, 663-64, 2 P.2d

Seattle also contends RCW 35.22.570 grants first-class cities authority to levy an income tax by according it powers enumerated in Title 35A RCW, the optional municipal code.[59] Seattle is a first-class city with a governing charter and has not opted into the optional municipal code.[60] Nevertheless, RCW 35.22.570 grants first class charter cities "all the powers which are conferred upon incorporated cities and towns by this title [Title 35 RCW] or other laws of the state, and all such powers as are usually exercised by municipal corporations of like character and degree."

The plain language of RCW 35.22.570 grants first-class charter cities "all of the powers" conferred upon all other "incorporated cities" by both Title 35 RCW and Title 35A RCW. Additionally, we construe RCW 35.22.570 liberally when determining the legislature's intent.[61] Thus, it appears the legislature intended to grant broad powers of self-governance on first-class charter cities through the grants of authority in both Title 35 RCW and Title 35A RCW.[62]

---

653 (1931) (citing LAWS OF 1931, ch. 96, § 1). And even after the Culliton decision clearly stated income is intangible property, the legislature enacted the net income tax at issue in Jensen. See Jensen, 185 Wash. at 211, 215-16 (citing LAWS OF 1935, ch. 178). It would be incongruous to conclude that at the same time the legislature enacted a tax on income, it also intended RCW 84.36.070 to impede a tax on income. We decline to read the word "income" into RCW 84.36.070(2).

[59] Seattle Appellant's Br. at 41, 46.

[60] See RCW 35.01.010 ("A first-class city is a city with a population of ten thousand or more at the time of its organization or reorganization that has a charter adopted under [a]rticle XI, section 10, of the state [c]onstitution.").

[61] RCW 35.22.900.

[62] See Watson, 189 Wn.2d at 170 n.8 (relying on RCW 35.22.570 to conclude that RCW 35A.82.020 granted Seattle "the same tax authority granted to code cities"); see also Hugh Spitzer, "Home Rule" vs. "Dillon's Rule" for Washington Cities, 38 SEATTLE U.L. REV. 809, 839-40 (2015) (explaining that the 1965 amendments to chapter 35.22 RCW "expressly broadened the powers of first class charter cities.").

In the optional municipal code, RCW 35A.11.020 grants general taxing authority to cities.[63] "Within constitutional limitations, legislative bodies of code cities shall have within their territorial limits all powers of taxation for local purposes."[64] A related statute provides "[p]owers of . . . taxation . . . may be exercised by the legislative bodies of code cities in the manner provided in this title or by the general law of the state where not inconsistent with this title."[65] And the legislature's statement of purpose for chapter 35A.11 RCW is unambiguously broad: "The general grant of municipal power conferred by this chapter and this title . . . is intended to confer the greatest power of local self-government consistent with the [c]onstitution of this state and shall be construed liberally in favor of such cities."[66] RCW 35A.11.020's unambiguous language demonstrates the legislature's intent to provide a "general grant of taxing power" to raise revenue for local purposes.[67]

---

[63] See City of Port Angeles v. Our Water-Our Choice!, 170 Wn.2d 1, 15 n.7, 239 P.3d 589 (2010) ( "In our view, RCW 35A.11.020 grants code cities broad, though specific, powers notwithstanding 'Dillon's Rule' (which limits municipal powers to those specifically granted or necessarily implied)."); accord id. at 20 (Sanders, J. dissenting) (RCW 35A.11.020 "is a general grant of authority.").

[64] RCW 35A.11.020 (emphasis added). The statute expressly withholds authority for municipal levies of taxes on liquor, insurers, and insurance producers. Id. (citing RCW 66.08.120, 48.14.020, and 48.14.080). These restrictions are not relevant here.

[65] RCW 35A.11.030.

[66] RCW 35A.11.050; see City of Wenatchee v. Chelan County Pub. Util. Dist. No. 1, 181 Wn. App. 326, 337, 325 P.3d 419 (2014) (noting the "legislature's directive that all grants of authority in Title 35A RCW, whether specific or general, be liberally construed in favor of the municipality").

[67] Algona, 101 Wn.2d at 792. Tax opponents rely on Algona to contend RCW 35A.11.020 confers no actual taxing authority and instead shows that a city requires additional and specific tax authorization. In Algona, the city levied a business and occupation tax on revenue King County received from operating a solid waste transfer station in the city. Id. at 790. King County sued to recoup its tax payments. Id. at 791. The county argued, and the court agreed, that the governmental immunity

The breadth of the taxing authority from this statute, however, is not so great as to overwhelm article VII, section 1 of our constitution. Culliton holds that income is property under the constitution, so any proper exercise of authority to tax income would levy a tax on property, no matter the label attached by the enacting legislative body. Thus, regardless of the quality of the argument, we decline Seattle's invitation to offer an advisory opinion on whether an income tax should be analyzed as an excise tax or a tax sui generis.

Tax opponents argue that the legislature constrained its grants of taxing authority to Seattle by enacting RCW 36.65.030, a statute prohibiting any "county, city, or city-county" from levying "a tax on net income." Seattle and EOI insist the statute is inapplicable because Seattle's ordinance taxes "total" income rather than "net" income.

"'The character of a tax is determined by its incidents, not by its name.'"[68] To determine the incidence of a tax, we consider "who is being taxed, what is being taxed, and how the tax is measured."[69] Here, there is no dispute that Seattle residents would be taxed on their income. The issue is whether the amount a Seattle resident would pay in taxes is measured by their net income.

---

doctrine prevented one municipality from taxing another without express statutory authorization. Id. at 793. Because chapter 35A.11 RCW did not expressly allow one municipality to tax another, the court held the city's business and occupation tax was unconstitutional. Id. at 794-95. Here, Seattle attempted to tax city residents rather than another municipality. Algona is not helpful to the tax opponents.

[68] Washington Pub. Ports Ass'n, 148 Wn.2d at 650 (quoting Harbour Village Apartments v. City of Mukilteo, 139 Wn.2d 604, 607, 989 P.2d 542 (1999)).

[69] P. Lorillard Co. v. City of Seattle, 83 Wn.2d 586, 589, 521 P.2d 208 (1974).

Seattle defines "total income" as "the amount reported as income before any adjustments, deductions, or credits on a resident taxpayer's United States individual income tax return for the tax year, listed as 'total income' on line 22 of Internal Revenue Service Form 1040."[70] RCW 36.65.030 does not define "net income," so we look to the dictionary.[71] "Net income" is "the balance of gross income remaining after deducting related costs and expenses [usually] for a given period and losses allocable to the period."[72] Thus, to be something other than a net income tax, Seattle's tax must extend to gross income. For the purposes of this analysis, "gross income" is "the total of all revenue or receipts [usually] for a given period except receipts or returns of capital."[73] Seattle contends the total income amount on line 22 of Form 1040 is "the unadjusted gross income received by an individual or joint resident taxpayer."[74] We disagree.

Line 22 on IRS Form 1040 is an aggregate of different income sources.[75] It includes wages, business income, rental and partnership income, and 11 other sources.[76] But several of those sources are measured by net income. For example, the sole proprietor of a business would calculate her income using IRS Form

---

[70] SMC § 5.65.020(G).

[71] HomeStreet, 166 Wn.2d at 451.

[72] WEBSTER'S THIRD NEW INT'L DICTIONARY OF THE ENGLISH LANGUAGE 1520 (3d ed. 2002).

[73] Id. at 1002.

[74] Seattle Reply Br. at 3 (boldface omitted).

[75] CP at 1147.

[76] Id.

Schedule C and report it on line 12 of Form 1040.[77] Using Schedule C, she would first total her gross income.[78] Next, she would tabulate 20 different expenses, including legal and professional services, taxes and licenses, wages, and advertising, and then deduct the total of those expenses from her gross income.[79] From that amount, she could also deduct the expense of the business use of her home.[80] The amount remaining is identified on Schedule C as her "net profit (or loss)" to be reported on Form 1040.[81] Similarly, the amount reported on line 17 of Form 1040 is also a net calculation.[82]

Seattle and EOI argue line 22 reflects gross income when viewed from an individual taxpayer's perspective because any deductions are for expenses attributable to a business rather than the individual taxpayer.[83] But as amici Greater Seattle Business Association and Ethnic Business Coalition explain, a sole proprietor's calculation of her total income represents her gross income from her individual business activities only <u>after</u> deducting her individual costs and expenses from conducting those activities. For that sole proprietor, her income is the business's income, from any perspective. Further, any taxpayer could have a large

---

[77] CP at 1147, 1149.

[78] CP at 1149.

[79] <u>Id.</u>

[80] <u>Id.</u>

[81] <u>Id.</u>

[82] <u>See</u> CP at 1155-56. IRS Form Schedule E is used to calculate the amount reported on line 17. <u>Id.</u> Like Schedule C, a landlord using Schedule E would deduct expenses for advertising, travel, repairs, taxes, utilities, depreciation, and others when calculating the amount of rental income to report on Form 1040. <u>Id.</u>

[83] EOI Appellant's Br. at 41-42.

gross income but no total income because of the dozens of above-the-line deductions permitted in the tax code.[84] Seattle's analogy to take-home pay as the measure of true total income is not compelling. Line 22 is not a measure of gross income.

We agree with the trial court's conclusion: "[A] 'total income' figure that includes 'net proceeds' necessarily reflects the result of a netting process, and thus is 'net income.'"[85] Because Seattle's income tax measures a city resident's taxable income based on the sum of net calculations, it is a net income tax. For purposes of RCW 36.65.030, Seattle's income tax is a tax on net rather than gross income. Seattle's income tax falls within the prohibition in RCW 36.65.030.

This statutory prohibition is irrelevant, however, if it is itself unconstitutional. EOI contends RCW 36.65.030 is unconstitutional because the legislation that enacted the prohibition, Substitute Senate Bill 4313, violated sections 19 and 37 of article II in our constitution.

Article II, section 19 states, "No bill shall embrace more than one subject, and that shall be expressed in the title."[86] This translates into two requirements: the "single subject rule" and the "subject in title rule."[87] EOI's appeal focuses solely on the single subject rule.

---

[84] See I.R.C. § 62(a)(2) (listing above-the-line deductions).

[85] CP at 1313.

[86] WASH. CONST. art. II, § 19.

[87] Citizens for Responsible Wildlife Mgmt. v. State, 149 Wn.2d 622, 632, 71 P.3d 644 (2003).

18

A section 19 analysis "is limited to the title and body of the act"[88] because "the constitutional inquiry is founded on the question whether a measure is drafted in such a way that those voting on it may be required to vote for something of which the voter disapproves in order to obtain approval of an unrelated law."[89] Evidence beyond the bill's four corners is beyond the court's inquiry.[90]

"The plain language of [article II, section 19] makes it mandatory that the members of the legislature be given the opportunity to consider legislative subjects in separate bills, so that each subject may stand or fall upon its own merits or demerits."[91] Accordingly, the single subject rule guards against logrolling, which is combining multiple measures that could not pass separately, and riding, which is pushing through unpopular legislation by attaching it to popular or necessary legislation.[92] Where legislation has multiple subjects, "'it is impossible for the court to

---

[88] Id. at 639; see Wash. Fed'n of State Emps. v. State, 127 Wn.2d 544, 556, 901 P.2d 1028 (1995) ("[A] court examines the body of the act to determine whether the title reflects the subject matter of the act.").

[89] Amalg. Transit Union Local 587 v. State, 142 Wn.2d 183, 212, 11 P.3d 762 (2000).

[90] See Wildlife Mgmt., 149 Wn.2d at 639 (disregarding as "not relevant" arguments that were based on testimony given in a state senate hearing about a measure's constitutionality under the single subject rule); Amalg. Transit, 142 Wn.2d at 212 ("Thus, regardless of what is in the Voters Pamphlet or the history of the initiative, the rational relationship inquiry centers on what is in the measure itself, i.e., whether the measure contains unrelated laws.").

[91] Washington Toll Bridge Auth. v. State, 49 Wn.2d 520, 525, 304 P.2d 676 (1956).

[92] Am. Hotel & Lodging Ass'n v. City of Seattle, 6 Wn. App. 2d 928, 938, 432 P.3d 434 (2018) (citing Wash. Ass'n for Substance Abuse & Violence Prevention v. State, 174 Wn.2d 642, 655, 278 P.3d 632 (2012) (WASAVP)); Robert D. Cooter & Michael D. Gilbert, A Theory of Direct Democracy and the Single Subject Rule, 110 COLUM. L. REV. 687, 705-06 (2010)), review granted, 193 Wn.2d 1008, 439 P.3d 1069 (2019); see Amalg. Transit, 142 Wn.2d at 190 (single subject rule prevents legislators from having to vote for a law they disfavor to obtain approval of a law they favor).

assess whether either subject would have received majority support if voted on separately.'"[93] A bill that violates the single subject rule is void in its entirety.[94]

When determining if a bill violated the single subject rule, the first step is classifying the bill's title as general or restrictive.[95] "A general title is broad, comprehensive, and generic; a few well-chosen words, suggesting the general topic, are all that is needed."[96] A restrictive title attempts to carve out a particular part of a subject to be the single subject of the legislation.[97] SSB 4313 was titled "AN ACT relating to local government; and adding a new chapter to Title 36 RCW."[98] Because this is expansive and generic, SSB 4313 has a general title.[99]

---

[93] Am. Hotel, 6 Wn. App. 2d at 939 (quoting City of Burien v. Kiga, 144 Wn.2d 819, 825, 31 P.3d 659 (2001)).

[94] Lee, 185 Wn.2d at 620.

[95] State v. Haviland, 186 Wn. App. 214, 219, 345 P.3d 831 (2015) (quoting State v. Alexander, 184 Wash. App. 892, 340 P.3d 247 (2014)); see Lee, 185 Wn.2d at 620 ("Whether an initiative violates the single subject rule generally starts with the ballot title.").

[96] Lee, 185 Wn.2d at 620-21.

[97] Wildlife Mgmt., 149 Wn.2d at 633 (quoting State v. Broadaway, 133 Wn.2d 118, 127, 942 P.2d 363 (1997)).

[98] LAWS OF 1984, ch. 91. EOI concedes this is the title for purposes of appeal. EOI Appellant's Br. at 28 n.7. Even if EOI continued to argue on appeal, as it did below, that the relevant title was the one added by the code reviser, "the legislative title is the relevant title because it . . . is the title which appears on the proposed bill before [legislators]." Broadaway, 133 Wn.2d at 125.

[99] EOI and tax opponents disagree about whether the topic of SSB 4313 is "local government" or "city-county government." See EOI Appellant's Br. at 29; Kunath Resp't's Br. at 23-24; Levine/Burke Resp. to EOI Br. at 11-13. We need not resolve this dispute because it does not affect the constitutionality of SSB 4313.

Where legislation has a general title, the next step is determining whether the legislation has rational unity.[100] "Rational unity exists when the matters within the body of the initiative are germane to the general title _and_ to one another."[101] A useful measure for rational unity is whether a bill's myriad subparts are connected by a common unifying theme.[102]

In <u>Barde v. State</u>, the court held two statutes were unconstitutionally enacted in violation of article II, section 19.[103] The legislature passed a bill entitled "AN ACT Relating to the taking or withholding of property."[104] The bill had two sections. The first made it a gross misdemeanor to kill, injure, secret, or convert any dog.[105] The second authorized recovery of costs and attorney fees for a replevin action to recover

---

[100] <u>WASAVP</u>, 174 Wn.2d at 656 (quoting <u>Kiga</u>, 144 Wn.2d at 826); <u>Haviland</u>, 186 Wn. App. at 220 (quoting <u>Amal. Transit</u>, 142 Wn.2d at 209).

[101] <u>Filo Foods, LLC v. City of SeaTac</u>, 183 Wn.2d 770, 782-83, 357 P.3d 1040 (2015) (emphasis added); <u>see</u> <u>WASAVP</u>, 174 Wn.2d at 656 (explaining that evaluating rational unity involves looking for the "'general purpose of the particular legislative act'") (quoting <u>State ex rel. Wash. Toll Bridge Auth. v. Yelle</u>, 61 Wn.2d 28, 33, 377 P.2d 466 (1962.)).

[102] <u>See</u> <u>Wash. Fed'n of State Emps.</u>, 127 Wn.2d at 576 (Talmadge, J., concurring in part) ("If the title of the enactment is a 'laundry list' of the contents of the legislation, this is suggestive of the possibility that the [l]egislature or the proponents of a popular enactment could not articulate a single unifying principle for the contents of the measure. Similarly, a law containing subdivisions that allegedly relate to a subject such as 'fiscal affairs,' 'government,' or 'public welfare' could violate the single-subject provision because the subject matter was excessively general."). Justice Talmadge identifies five indicia he argues should be weighed when considering a question of rational unity. <u>Id.</u> at 573-76. These are largely evidentiary considerations. <u>Id.</u> Because our Supreme Court has since held section 19 analyses are to be restricted to the legislation itself, <u>Wildlife Mgmt.</u>, 149 Wn.2d at 639, only the concept of a "single unifying principle" is still helpful. Thus, the parties' arguments that rely on extrinsic evidence are unavailing.

[103] 90 Wn.2d 470, 472, 584 P.2d 390 (1978).

[104] <u>Id.</u> at 471.

[105] <u>Id.</u>

stolen goods from a pawnbroker.[106] The court noted an arguable unity existed "between replevin and 'dognapping' inasmuch as both relate to personal property," but the actual substance of the second section involved recovery of costs and attorney fees for a civil tort that only happened to be replevin.[107] Accordingly, the court held no rational unity existed between the subsections and invalidated the statutes enacted by the bill.[108]

More recently, the court in Washington Association for Substance Abuse and Violence Prevention v. State held a large, comprehensive ballot initiative did not violate the single subject rule.[109] The initiative had a lengthy, but general, title:

> Initiative Measure No. 1183 concerns liquor: beer, wine, and spirits (hard liquor). This measure would close state liquor stores and sell their assets; license private parties to sell and distribute spirits; set license fees based on sales; regulate licensees; and change regulation of wine distribution.[110]

The initiative directed certain expenditures from the "Liquor Revolving Fund," which was the longstanding state account funded by all monies received by the then-Liquor Control Board.[111] The initiative also imposed fees on retailers and distributors of hard liquor, modified wine distribution laws, authorized private hard liquor sales, and changed advertising regulations for alcohol.[112] Central to the court's analysis was the well-established link between alcohol regulation, public safety, and revenue

---

[106] Id.

[107] Id. at 472.

[108] Id.

[109] 174 Wn.2d 642, 660, 278 P.3d 632 (2012).

[110] Id. at 647.

[111] Id. at 648.

[112] Id. at 649-51.

generation.[113] And liquor was historically governed by a single comprehensive regulatory regime.[114] Unlike Barde, the initiative had liquor regulation as its common unifying theme rather than combining two unlike subjects. The initiative satisfied the single subject rule because its comprehensive regulations all had clear links to the title and each other by directly regulating alcoholic beverages or by being closely related to the consequences of alcohol regulation.[115]

In American Hotel & Lodging Association v. City of Seattle, this court recently held a Seattle ballot initiative that "concern[ed] health, safety and labor standards for Seattle hotel employees" violated single subject restrictions.[116] The ballot initiative contained "at least four distinct and separate purposes."[117] Part 1 protected hotel employees from violent assault and sexual harassment.[118] Part 2 protected hotel employees from on-the-job injuries.[119] Part 3 aimed to improve hotel employees' access to health care.[120] Part 4 provided job security to certain low income hotel workers.[121] Although each section related to the general health, safety, and labor issues of hotel employees, the sections' public policy purposes and operative

---

[113] See id. at 657 ("I-1183's provision of funds for public safety actually has a closer nexus to the subject of liquor than does the general revenue provision that has existed since the State began regulating liquor.").

[114] Id. 659.

[115] Id.

[116] 6 Wn. App. 2d 928, 932, 432 P.3d 434 (2018), review granted, 193 Wn.2d 1008, 439 P.3d 1069 (2019) (emphasis omitted).

[117] Id. at 941.

[118] Id.

[119] Id.

[120] Id.

[121] Id. at 942.

provisions were "completely unrelated" to each other.[122] In the absence of a common unifying theme, this ballot initiative violated the single subject standard.

Here, Substitute Senate Bill (SSB) 4313 contained five sections legally relevant for purposes of a single subject analysis.[123] Tax opponents argue SSB 4313 had rational unity because article XI, section 16 of the constitution requires that any restriction imposed on a city-county also be imposed on cities and counties, and SSB 4313 was intended to implement article XI, section 16.[124] But they fail to identify the required rational unity between all five operative sections of the bill.[125]

Unlike Washington Association for Substance Abuse and Violence Prevention, the several subjects in SSB 4313 lack a common unifying theme. Section 2 preserved school districts as entities distinct from city-counties.[126] Section 3 prohibited any municipality from levying a net income tax.[127] Section 4 concerned state revenue calculations and allocations during the year following the formation of a city-county.[128] Section 5 preserved certain collective bargaining rights for police

---

[122] Id.

[123] Although six of the seven sections in the legislation were codified at chapter 36.65 RCW, LAWS OF 1984, ch. 91, § 7, the statement of intent in section 1 of the legislation is not part of the single subject analysis. WASAVP, 174 Wn.2d at 659 ("Policy expressions [ ] do not contribute additional subjects within the meaning of the single-subject rule."). Section 7 of SSB 4313 was a technical section stating that sections 1 through 6 in the bill would form a new chapter.

[124] Kunath Resp't's Br. at 22-23; Levine/Burke Resp. to EOI Br. at 14-15.

[125] See Filo, 183 Wn.2d at 782-83 (rational unity is required within all subsections and with the title).

[126] LAWS OF 1984, ch. 91, § 2.

[127] Id. § 3.

[128] Id. § 4.

24

officers and firefighters in city-county governments.[129] And section 6 preserved pension and disability benefits for all current and former municipal employees affected by the formation of a city-county.[130] Three of the five substantive sections are limited to the city-county form of government, and section 4 applies to state government financing regarding a city-county. But section 3 applies broadly to cities, counties, and city-counties. The city-county form of government is not a true unifying theme for these disparate subsections. The subsections are not adequately germane to each other. The only seeming connection between all subsections of the bill was that they generally relate to, as the bill title states, local government. But this general subject is so expansive that literally any set of legislative enactments affecting any aspect of towns, cities, or city-counties would purport to satisfy the rational unity test, thus undermining the purpose of the single subject rule.[131] As in Barde and American Hotel, SSB 4313 lacks rational unity between its subparts.

Because it is impossible to assess whether the broad prohibition on net income taxes would have passed without the bill's unrelated provisions, SSB 4313 violated the single subject rule in article II, section 19.[132] Accepting tax opponents' arguments would set a low bar for rational unity and fail to uphold the purposes of article II, section 19. Accordingly, chapter 36.65 RCW, which was enacted in its

---

[129] Id. § 5.

[130] Id. § 6.

[131] See Wash. Fed'n of State Emps., 127 Wn.2d at 576 (Talmadge, J., concurring in part) (an "excessively general" subject could violate the single subject rule where the bill lacks a unifying theme); see also Wash. Toll Bridge Auth., 49 Wn.2d at 524 (explaining the purpose of the single subject rule "is to avoid hodgepodge and 'logrolling' legislation") (quoting Power, 39 Wn.2d at 198).

[132] Kiga, 144 Wn.2d at 825.

25

entirety by SSB 4313, is unconstitutional.[133] Because we hold SSB 4313 is unconstitutional in its entirety for violating article II, section 19, we do not need to consider whether section three of SSB 4313 also violated article II, section 37.

## V. Constitutionality of Seattle's Graduated Income Tax

Having addressed the statutory questions surrounding Seattle's authority to levy a net income tax, we now consider whether its tax is unconstitutional. Article VII, section 1 contains a comprehensive definition of "property" and requires that all taxes be uniform on the same classes of property.[134]

> All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. The word "property" as used herein shall mean and include everything, whether tangible or intangible, subject to ownership.[135]

As discussed above, this text first appeared in article VII, section 1 in 1930 after the passage of amendment 14. And in Culliton, our Supreme Court held that within the meaning of our constitution, "income is property, and that an income tax is a property tax."[136] Because Seattle levied a property tax on income, it is unconstitutional unless levied uniformly.

Under Seattle's graduated taxing scheme, income is broken into two classes and taxed at different rates depending on its classification.[137] For example, all individual income above $250,000 is taxed at a rate of 2.25 percent, and all income

---

[133] See Lee, 185 Wn.2d at 620 (legislation "is void in its entirety" when it violates the single subject rule).

[134] Culliton, 174 Wash. at 374.

[135] WASH. CONST. art. VII, § 1.

[136] Jensen, 185 Wash. at 216 (citing Culliton, 174 Wash. at 374).

[137] SMC § 5.65.030(B).

below $250,000 is taxed at zero percent.[138] This is nonuniform taxation levied upon income, a single class of property. Whether authorized by RCW 35.22.280(2) or RCW 35A.11.020, Seattle's graduated income tax violates the uniformity clause in article VII, section 1 and is unconstitutional.[139]

## VI. Cross Appeal

The remaining issues concern Kunath's cross appeal of the court's denial of his motions for CR 11 sanctions and for attorney fees.

We review a decision to impose or deny CR 11 sanctions for abuse of discretion.[140] The purpose behind CR 11 is to deter baseless filings and to curb abuses of the judicial system.[141] A filing "must lack a legal or factual basis before it can become the proper subject of CR 11 sanctions."[142] And even then, an attorney cannot be sanctioned unless they also failed to conduct a reasonable inquiry into the

---

[138] Id.

[139] Because the tax is unconstitutional under article VII, section 1, we decline to consider Shock's argument that the tax violates equal protection guarantees in the Washington and United States Constitutions; although, we note that statutes based on economic distinctions generally satisfy the rational basis test. See Welch v. Henry, 305 U.S. 134, 143-44, 59 S. Ct. 121, 83 L. Ed. 87 (1938) (income tax rate classifications do not violate the equal protection clause of the Fourteenth Amendment so long as "reasonabl[y] relat[ed] to a legitimate end of governmental action"); accord Am. Legion Post # 149 v. Wash. State Dep't of Health, 164 Wn.2d 570, 609, 192 P.3d 306 (2008) ("Social and economic legislation that does not implicate a suspect class or fundamental right is presumed to be rational; this presumption may be overcome by a clear showing that the law is arbitrary and irrational.").

[140] Heckard v. Murray, 5 Wn. App. 2d 586, 594, 428 P.3d 141 (2018), review denied, 192 Wn.2d 1013, 432 P.3d 783 (2019). Although Kunath moved for CR 11 sanctions against both Seattle and EOI, on appeal, he appears to have conceded denial of his motion for sanctions against Seattle by arguing the trial court erred only as to EOI. See Kunath Resp't's Br. at 17-20, 46.

[141] Heckard, 5 Wn. App. 2d at 595.

[142] Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 220, 829 P.2d 1099 (1992).

27

factual and legal basis of the claim.[143] EOI's argument before the trial court about the title of SSB 4313 may have been incorrect,[144] but making a legally inaccurate argument does not, without more, expose an attorney to sanctions under CR 11.[145] Kunath fails to show the court abused its discretion.

We review a decision to award or deny attorney fees for abuse of discretion.[146] Kunath sought fees under the "common fund" doctrine.[147] He requested that the court award him $35,000,000, which is 25 percent of the $140,000,000 Seattle estimated it would collect annually through its income tax.[148] The common fund doctrine is a narrow equitable ground that authorizes an award of fees "only when a litigant preserves or creates a common fund for the benefit of others as well as themselves."[149] Attorney fees awarded under the common fund doctrine are paid by the prevailing party, which pays attorney fees out of the fund created or preserved for their benefit.[150] For example, in Bowles v. Department of Retirement Systems, the court affirmed the grant of attorney fees to a few plaintiffs under the common fund

---

[143] Id.

[144] See Broadaway, 133 Wn.2d at 368 ("[T]he legislative title is the relevant title because it . . . is the title which appears on the proposed bill before [legislators].").

[145] CR 11(a)(2).

[146] Harmony at Madrona Park Owners Ass'n v. Madison Harmony Dev., Inc., 143 Wn. App. 345, 363, 177 P.3d 755 (2008).

[147] CP at 1367.

[148] CP at 1368.

[149] City of Sequim v. Malkasian, 157 Wn.2d 251, 271, 138 P.3d 943 (2006).

[150] Bowles v. Wash. Dep't of Ret. Sys., 121 Wn.2d 52, 70-71, 847 P.2d 440 (1993).

doctrine where they successfully sued to secure payment of additional monies into their pension plan, thereby increasing payments to all plan members.[151]

Kunath insists he preserved a common fund: "$140 million of Seattle residents' funds will be preserved . . . because without this action, that amount would have been taken from them."[152] He especially emphasizes cases noting that a substantial benefit to another is part of the common fund doctrine. But merely benefiting another is not sufficient. The fact that Seattle residents do not have to pay the income tax neither establishes nor preserves a common fund. Contrary to Kunath's argument, Bowles featured a single pension plan—a common fund—and did not require aggregation of the funds needed to pay the award. Seattle should not be compelled to "obtain reimbursement" from benefited taxpayers in order to collect and then redistribute funds to Kunath.[153] The court did not abuse its discretion by declining to award attorney fees.[154]

## CONCLUSION

Article VII, section 1 of our constitution, as interpreted by Culliton, considers income to be intangible property, so a tax on income is a tax on property. Arguments to the contrary can be resolved only by our Supreme Court.

---

[151] 121 Wn.2d 52, 57-61, 847 P.2d 440 (1993).

[152] Kunath Resp't's Br. at 39.

[153] Kunath Reply Br. at 7-8.

[154] Kunath also requests sanctions on appeal under RAP 18.9. Other than a single phrase on the last page of his response brief stating the court should "impose RAP 18.9 sanctions," Kunath Resp't's Br. at 46, he fails to make any argument in favor of sanctions or even specify the party to be sanctioned. We deny his request.

In this case, the legislature granted Seattle authority to tax intangible personal property, including income, under either RCW 35.22.280(2) or RCW 35A.11.020. RCW 36.65.030 prohibits any municipal levy of a net income tax. But the enacting bill for RCW 36.65.030 violated the constitutional prohibition in article II, section 19 on legislation with more than a single subject. Consequently, RCW 36.65.030 is unconstitutional and no statutory prohibition limits Seattle's authority to levy a property tax on income.

Under the doctrine of stare decisis, we are bound by our Supreme Court's precedential decisions that a tax on income is a property tax and that a graduated income tax violates the uniformity provision of article VII, section 1. Because Seattle enacted a graduated tax on income, it is unconstitutional.

Based upon this alternative rationale, we affirm summary judgment in favor of the tax opponents.

WE CONCUR:

_____

_____

Andrus, J.